## J. EVERETT SMITH v. STATE.

No. A-9209. May 28, 1937.
(69 Pac. [2d] 394.)

428

Mauntel & Spellman, Walter M. Thomas, and Maurice M. Thomas, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and James G. Young, Co. Atty., of Woodward, for the State.

BAREFOOT, J. The defendant was charged with the crime of embezzlement in Woodward county. He was tried, convicted, and sentenced to serve a term of three years in the penitentiary. He was the deputy court clerk of Woodward county for a period of from April 29, 1929, to April 14, 1931, during which period of time E. B. Roll was court clerk, and upon his death, which occurred April 14, 1931, his wife, Agnes Roll, was appointed to succeed him, and the defendant was deputy court clerk under her until January 2, 1933. The record shows that Mrs. Roll, who was appointed to succeed her husband, was not able to conduct the affairs of the court clerk's office, and prac-

tically all of the work fell to the defendant. The evidence showed that there was kept in the office a cash book in which all money received was supposed to be posted. Also a receipt book where receipts were issued for all money received, the original being given to the party paying the money, and the duplicate receipt being kept in the office. In addition to this an appearance docket was kept, and this docket showed the amount deposited in each case, both probate and civil.

The court clerk was also clerk of the county court, and had a deputy in that office who received the money coming thereto and issued receipts the same as above indicated, including money received for marriage licenses and marriage ceremonies.

The evidence showed that Mrs. E. M. Warren was the deputy clerk in the county court; the county court being downstairs and the court clerk being upstairs. The evidence showed that when Mrs. Warren collected money she each day carried it upstairs to the court clerk's office, and turned it to the defendant, who issued her a receipt therefor. The evidence showed that the defendant, as required by the statute, then deposited all money received each day in the office of the county treasurer and the county treasurer issued an original deposit slip which was kept in his office, and a duplicate deposit slip which was given to the county officer making the deposit, and was filed as a part of the records of his office. The county treasurer also kept a deposit book in which was recorded every deposit made by a county officer, and at the end of each month a report was made by the county treasurer to each county officer showing the amount of deposits made by his office during the month so the same could be checked by the county officer. The evidence in this case shows that these deposits for the court clerk's office

were made by the defendant. The audit upon which the defendant was prosecuted in this case was made by an officer from the office of the State Examiner and Inspector's office. It was made several years after the defendant went out of office, and showed a shortage of $802.07 in the office of the court clerk of Woodward county, some of which was barred by the statute of limitations. The state used as a witness Mrs. Warren, who was the deputy court clerk in the county court. She testified to the manner of receiving and receipting for money by her, and identified receipts showing the money she had turned over to the defendant. Those receipts were in the defendant's handwriting. She swore that she, at no time, deposited money in the county treasury.

Mrs. Roll had died prior to the time this case was tried. The evidence showed she did not know very much about conducting the affairs of the office, and did very little work therein; that the receiving of money, the keeping of the books, the depositing of the funds was all handled by the defendant. The deputy county treasurer testified that all the funds were deposited by the defendant, and that she had no recollection of Mrs. Roll ever depositing any funds. The auditor who testified in denial showed each item of receipt of money by the defendant, and pointed out from the audit and the record of the court clerk and county treasurer where day after day money was received by the defendant, as shown by said record, and the same was not deposited with the county treasurer in the manner provided by law; a part of this being the money turned over to him by Mrs. Warren and for which she had his receipt. These items would run from a dollar some days to fifteen or seventeen dollars other days. There seemed to be a systematic shortage of small amounts on frequent days.

From a reading of the record it is hard to state the exact amount of the shortage; the information alleged $566.29, but the audit showed it to be more than this amount. The defendant did not testify in his own behalf. The money was traced into his hands, and the proof showed that the same was not deposited with the county treasurer in the manner provided by law, and under the statute this constituted a misappropriation of the county funds.

The contention of defendant that some one else could have misappropriated the funds is merely a conjecture. The evidence showed that he was the one who had charge of them, and he was the one who failed to account for them, according to the verdict of the jury.

It is first contended by the defendant that he was prosecuted for embezzlement of public funds under section 7761, O. S. 1931 (19 Okla. St. Ann. §. 641), and that under said section it was necessary for the state to show a personal appropriation of said funds by the defendant before he could be convicted under this statute.

We think that under the decisions of this court it is necessary under this statute to show there was a personal conversion, but we think that the proof as revealed by the record shows a personal conversion by the defendant. State v. Harris et al., 47 Okla. Cr. 344, 288 Pac. 385; Griswold v. State, 23 Okla. Cr. 136, 212 Pac. 1018.

The record shows the items with which the defendant was charged with embezzling were traced into his hands. Receipts were issued by the defendant in his own handwriting, charges were made on the cash book and on the appearance docket all in his own handwriting. Some of these items were for marriage licenses and other public moneys that came into his hands as deputy court clerk. The record shows that these funds were not deposited in

the manner provided by law. That this duty was intrusted to him is not denied. In order to appropriate the public funds to one's private use it is not necessary for the state to show by direct evidence the actual securing of the funds and the spending of the same. Often this would be impossible. When the funds were shown to have come into the actual possession of the defendant and they were not deposited in the office of the county treasurer, or turned over to the county in the manner provided by law, the jury has a right to infer that they have been misappropriated under the statute above indicated. The cases draw a close distinction as to the duty devolving upon public officials and those devolving upon individuals, and especially when they are acting under a special statute, adopted for the purpose of protecting public funds which have come into the possession of public officers.

In the case of O'Brien v. United States, 27 App. D. C. 263, the court says:

"* * * The inference that a prisoner has embezzled property by fraudulently converting it to his own use may be drawn from the fact that he has not paid the money in due course to the owner, or from the fact that he has not accounted for the money which he has received. Stephens' Digest Crim. Law, art. 312."

And in the case of Reynolds v. State, 65 N. J. Law, 424, 47 A. 644, 646, the court says:

"A demand is only one class of evidence for proving fraududent conversion. Other classes are: (1) Where, by statute, a public officer is required to pay over funds at a definite time, and fails to do so, and there is proof that he has not done so, and that he has applied the same to his own use, that is evidence from which a jury may find a fraudulent conversion, even without a demand; or (2) where, by the rules and regulations or agreement under which a defendant is employed, and to which he is required

to conform, a time is definitely fixed for him to account for moneys received, and it appears that he has lawfully received moneys of his employer, but has not paid over the same in accordance with such rules, regulations, or agreement, but has converted the same to his own use, this is also evidence from which the jury may find that there was a fraudulent conversion of such funds without formal demand."

It is next contended by the defendant that the court erred in failing to give a requested instruction upon circumstantial evidence. We do not think there was any error upon the part of the court in its refusal to give this instruction. There was direct testimony in this case, sufficient, if believed by the jury, to warrant a conviction of the defendant. In fact, counsel for defendant made this admission during the trial of the case: "Yes, sir, those that he signed we will admit that he signed, and that he got the money on them." We do not think it was error to refuse an instruction on circumstantial evidence in this case.

It is next contended by the defendant that there was no embezzlement of more than $20 in any one day proven in this case, and that the defendant therefore was wrongfully convicted of a felony. In the information it was alleged that the amount embezzled amounted to $566.29. The proof showed an amount far in excess of $20, although it is hard to determine the exact amount. It is made up of different items each day which were less than $20, but the total amount far exceeded this amount. This court has often held contrary to the contention of defendant. The following cases fully discuss this proposition, giving the reasons why the embezzlement of small sums during different times by public officials constitutes a felony and not a misdemeanor, and many authorities from other states are cited therein. See Griswold v. State, 23 Okla. Cr. 136,

212 Pac. 1018; State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093; Casselman v. State, 58 Okla. Cr. 371, 54 Pac. (2d) 678.

The defendant contends that certain evidence was admitted which was incompetent, irrelevant, and immaterial. Under this contention it is urged that the court erred in permitting the state to introduce the duplicate deposit slips which were given by the county treasurer to the defendant, and which were filed in the court clerk's office as a part of the records of that office; insisting that the original deposit slips on file in the county treasurer's office should have been introduced. We think that under the testimony either of these deposit slips might be considered as original. They were prepared by the use of carbon paper, and a copy was retained by each officer. The originals, if it be so considered, were in the office of the county treasurer, if the defendant found any discrepancy, he had the privilege of securing the original and showing to the jury the discrepancy, if any. He did not do so, and we do not think it was error to admit the duplicates which were a part of the records in the court clerk's office. We have carefully examined the other evidence which was admitted and of which defendant complains, and we do not find error in the admission thereof.

The defendant did not see fit to take the witness stand in this case in his own behalf. This he had a right not to do. He introduced many witnesses who testified to his good character and good standing in the county where he lived. The jury of this same county heard this testimony and, after a careful consideration of the same, found the defendant guilty. No error has been pointed out which we consider is sufficient to warrant the granting of a reversal in this case, and it is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.