## CY BURROUGHS v. STATE.

No. A-10399. May 9, 1945.

(158 P. 2d 723.)

Hatcher & Bond, of Chickasha, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Cy Burroughs, was charged in the district court of Grady county with the crime of murder; was tried, convicted of manslaughter in the first degree, and sentenced to serve four years in the State Penitentiary, and has appealed.

For a reversal of this case, three assignments of error are presented: (1) The verdict is contrary to law and contrary to the evidence. (2) The court committed error in giving instructions Nos. 17 and 22, over the objections and exceptions of the defendant. (3) The court erred in admitting incompetent testimony offered by the state in rebuttal.

The defendant was 71 years of age. At the time of the homicide, he was employed by Bill's Grill in the city of Chickasha, which was a place where beer drinking and dancing were permitted, to keep the peace. He had been given a special commission by the sheriff for this purpose.

The deceased, Arthur Leon Hill, had served a term in the penitentiary and was frequently seen loitering around Bill's Grill and other similar establishments. It is agreed by all parties that there was considerable ill-feeling between the defendant and the deceased. A short time before the homicide occurred, the deceased went to the office of the county attorney and complained about the defendant, Cy Burroughs, having a special deputy sheriff's commission. The county attorney called Bill Brummitt, the owner of Bill's Grill, the sheriff, and the

defendant to his office, and, after listening to their stories, advised the deceased that the owner of the Grill did not want him in his establishment because he and the defendant could not get along and for him to remain out of the place.

Shortly after dark, on April 9, 1942, the deceased went into Bill's Grill. He sat down on a stool at the counter used by the patrons of the cafe and engaged the owner of the establishment in conversation. The testimony of the witnesses varied as to what was said between the deceased and Bill Brummitt, the proprietor, but all agreed that the defendant came to the front of the building where the deceased was sitting and ordered him out of the building. Many witnesses testified. Most of those who testified for the state swore that the deceased did not say a word, but got up, walked out of the building, turned when he reached the sidewalk, and started walking south. That the defendant with his pistol in his hand followed deceased to the door. That when deceased was about 30 feet away, the defendant shot him in the back. Some of the witnesses heard deceased cursing as he left.

The defendant testified that the deceased backed out of the building with his right hand in his pocket, and was cursing him violently. That when the deceased reached the sidewalk, he was still facing the defendant and made a motion as if to draw a gun, and the defendant shot him.

The deceased was unarmed and, so far as the record discloses, did not have even so much as a pocket knife on his person at the time he was shot.

The undertaker and the doctor who examined the

deceased after his death each testified that he was shot in the back near the spine and the bullet came out in front.

All of the eyewitnesses to the shooting, except defendant, swore that the defendant shot the deceased in the back. The defendant swore that the deceased was facing him. The only testimony in any way corroborative of defendant's statement that the deceased was facing him at the time he was shot was the testimony of the sheriff that, in his opinion, from an examination of the body of the deceased, the bullet had entered the chest and came out near the spine in the back.

After reading this record, a reasonable person could only conclude that the deceased had been shot in the back by the defendant. Even those witnesses favorable to the defendant on other points and who were his friends testified that the deceased was walking down the sidewalk with his back to the defendant.

The defendant showed that the deceased had made threats against his life, and the state in turn showed that the defendant was high-tempered and easily lost control of himself when he became aggravated. It was shown by the testimony of the police chief on cross-examination that the defendant on one occasion had pulled his pistol on a drunk and had fired it, almost hitting some other officers who were standing nearby.

The only way that the verdict is contrary to the evidence is that the evidence, even under the most favorable light to the defendant, would have justified a more severe punishment.

Instruction No. 17, complained of, provides:

"You are instructed, gentlemen, that neither insulting words, nor insulting conduct or epithets, nor assaults

previously made, that is, anterior to the actual time of the killing, had and done to the defendant at other and different places than at the scene of the homicide, nor insulting epithets, no matter how opprobrious, at the time of the killing, will justify or mitigate a homicide."

This instruction has been approved by this court in Brantley v. State, 15 Okla. Cr. 6, 175 P. 51. This instruction must be read in connection with all of the other instructions which were given. Counsel for defendant contend that this instruction nullified other instructions which were given stating the law in connection with threats which were allegedly made by deceased and in effect told the jury not to consider statements previously made by the deceased concerning the defendant in considering his justification of the homicidal act. We think that the jury thoroughly understood the law of the case and were not confused. Counsel for defendant himself states in his brief the following:

"The court went into great detail on its instructions on self-defense and the instructions on self-defense seem to be all right and announce the proper rule of law in this jurisdiction."

There were certain parts of instruction No. 22 with reference to the defendant which could very well have been omitted, or the law in reference thereto included in another instruction and not joined with an instruction concerning the reputation of the deceased for being of a quarrelsome and fighting disposition. If this instruction or any other instruction which was given prejudiced the defendant, it was not shown by the verdict. The harmless error doctrine as defined by statute would certainly here apply. 22 O. S. 1941 § 1068. Counsel for defendant evidently handled the defendant's case with skill because the writer of this opinion can hardly conceive, after re-

viewing this record, how a reasonable jury could have been so lenient with the defendant. It can only be explained by the fact that the deceased was a trouble-maker, and that counsel for defendant cleverly portrayed this bad character of the deceased before the jury. There were certainly no circumstances at the time of the immediate commission of the homicide which would have justified the leniency shown the defendant.

Complaint is made of a question asked of the chief of police by the county attorney on rebuttal. The question asked was improper. However, no exception was reserved by counsel for defendant. In addition, on cross-examination, counsel for defendant went into the same field and brought out additional matters far more damaging to his client than the answer given to the county attorney about which complaint is made.

We have carefully considered the entire record and the argument presented by counsel in his brief, but we have not found any material error in the record which this court could say substantially prejudiced the defendant. The physical facts clearly show that the defendant lost his temper over the abusive language directed at him by the deceased, as he was leaving the cafe, and having thus lost control of himself, fired the fatal shot without anything more provoking than abusive language.

The judgment and sentence of the district court of Grady county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.