## COLLIER v. STATE.

No. A-11483.  Sept. 10, 1952.

Rehearing Denied Sept. 17, 1952.

(253 P. 2d 568.)

O. A. Cargill, Sr., Oklahoma City, C. S. McCuistion, Lawton, David Tant, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Githen K. Rhoads, County Atty., Lawton, Jess Pullen, Sp. Pros., Oklahoma City, for defendant in error.

BRETT, P. J. Plaintiff in error James Albert Collier, Jr., defendant below, was charged by information on March 18, 1950 in the district court of Comanche county, Oklahoma, with the crime of the murder of one Clayton Dale Elkins in Lawton, Comanche county, Oklahoma, on February 12, 1950. The crime was allegedly committed by means of a certain shotgun which the said Collier unlawfully, wrongfully, with malicious and felonious intent discharged into the body of the said Elkins inflicting wounds from which Elkins lingered and died. Defendant was tried by a jury, convicted of first degree manslaughter, his punishment fixed at 30 years in the penitentiary, judgment and sentence entered accordingly, and from which this appeal has been perfected.

A brief resume of the evidence will be given as the basis for a better understanding of the propositions raised herein. We do not deem is necessary to give a detailed account thereof since basically the evidence is not attacked as being insufficient to sustain the verdict.

The parties to this tragic affair were the defendant, James Albert Collier,Jr., the son of a well established, substantial and highly respected family of southern Oklahoma, Mrs. Jimmie Lee Collier, the defendant's wife, the decedent Clayton Dale Elkins, the son of a highly respected family residing in Lawton, Oklahoma, and Mrs. Marie Elkins, the decedent's wife. It appears the defendant and Elkins had known one another for about 10 years prior to the killing. They were what would be considered friends, free from animosity and strife. The acquaintance commenced in Seminole, Oklahoma, before the men were married. At the time of the killing the Elkins lived in Oklahoma City, and on or about February 9, went to Lawton, Oklahoma, to visit Elkins' father who resided therein and who is Chief Clerk and Financial Secretary at the Cameron College of Agriculture located on the outskirts of Lawton. On Friday, February 10, Elkins went to town where he met James Albert Collier, Jr. Elkins took Collier home. The next day, Saturday, February 11, 1950, they met again at noon at Collier's home. There Elkins suggested Mrs. Collier call up Mrs. Elkins and invite them over for an evening's visit. This she did. Collier and Elkins both went to town

together where they had a drink of whiskey at the Big 6 bar, located in Lawton, which was served in a glass over the bar. (An open and notorious violation of law in Oklahoma.) They visited awhile, then parted the best of friends, to meet that night. The defendant made the rounds of several business establishments and then went home arriving at about 7:15 p. m., about 30 minutes before Elkins arrived. The record shows that defendant stopped at the bootleggers over the Big 6 bar and bought a half a pint of liquor which he brought home. When the Elkins arrived they all had a drink, then went out to Ruth's Drive-in where the defendant ate a hamburger steak. None of the other members of the party ate anything. The record shows they almost finished the half pint the defendant brought to his home. They then returned home and did finish the half pint. They went and got another half pint and finished that. All of this time the defendant and Mrs. Elkins were in the kitchen visiting alone, and Elkins and Mrs. Collier were in the living room visiting alone. Mrs. Elkins testified that when she went to the bathroom she saw Mrs. Collier's arms draped around Elkins. The whiskey having run out, Mr. Elkins and Mrs. Collier went to the bootleggers and obtained two and one-half pints of liquor. They were gone longer than they should have been and on returning the defendant inquired, "where in the hell have you been so long". The deceased explained that, "we have just been driving around", handed the defendant a half pint of whiskey, and said, "Here is your bottle. The seal is not broken". The record discloses that the deceased had taken Mrs. Collier out to Cameron College where his father lived, drove around the oval and returned to Collier's home. When they came in Mrs. Collier was crying. Collier inquired as to what was the matter. In short, it appears Elkins had told Mrs. Collier something that led her to believe that Collier was untrue to her. On inquiry, Elkins said, "Why, Collier, you know what you do". Defendant stated that such talk would cause trouble in his home and told Elkins it was time for him to leave. Defendant testified Elkins told him he was not big enough to make him leave. The defendant ordered Elkins out again and Mrs. Collier cried some more and Elkins put his arm around her consolingly. Whereupon the defendant left the kitchen, returned with his shotgun, pointed it at Elkins and told him to get going. Elkins shoved Mrs. Collier away, and the defendant said Elkins told him, "I'll tear your head off", lunged forward, grabbed the gun, jerked it forward and it discharged, hitting Elkins above the belt line and to the right making a mortal wound in the abdomen and lung. The shooting took place about 1:15 a. m., February 12, 1950, and Elkins died at about 5:30 a.m. that day. The record discloses this killing was absolutely uncalled for and was the result of what Mrs. Collier voluntarily stated, "it would not have happened if we had not been drinking". It appears Collier was 38 years of age and had 2 boys about 9 and 6 years of age. The record does not disclose how many children Mr. and Mrs. Elkins had. However, the assignments of error in the defendant's brief would indicate the Elkins had 3 children. The only other place such mention is made of them is in the motion for new trial where complaint was made that counsel mentioned 3 orphan children in his argument to the jury. These are the only places that such situation is indicated. This assignment was not urged in the defendant's brief.

The defendant's first proposition urged in his brief is that the trial court erred in giving instruction No. 14. In this connection, it is well to note that no objections or exceptions were taken to any of the instructions, nor any requests for alterations or changes suggested to said instructions, and no additional instructions were offered by defendant's counsel at the trial. No reference is made to any of the instructions in the motion for new trial. It has been repeatedly held by this court that matters occurring during the trial of a case, which counsel desires to assign as error, must appear by proper recital in the case-made, duly certified to as by law provided, independent of the motion for new

trial, and that errors assigned upon instructions given by the trial court will not be considered upon appeal, where the record fails to show that any objections were made or any exceptions taken to such instructions at the time they were given, unless the errors are of a fundamental character. Furthermore, it has been repeatedly held that where the defendant is not satisfied with the instructions given by the court and desires additional or different instructions, other than the instructions given by the court, they must reduce such instructions to writing and request they be given. Upon failure so to do a conviction will not be reversed where there is a failure to make such request, unless the Criminal Court of Appeals is of the opinion in light of the entire record and instructions, that, because of failure to instruct upon some material question of law, accused has been deprived of a substantial right. Fields v. State, 85 Okla. Cr. 439, 188 P. 2d 231. To the same effect is Brannon v. State, 94 Okla. Cr. 261, 234 P. 2d 934, The record discloses herein that the court took a recess during which the instructions were submitted to counsel for the purpose of determining whether or not they had any objections to the court's instructions or any suggestions or requests for instructions. None being made the trial court gave the instructions as they were prepared. The defendant's objection to instruction No. 14 is that it failed to include in said instruction, covering manslaughter in the first degree, the language of Title 21, § 711, O.S.A. 1951, "unless it is committed under such circumstances as constitute excusable or justifiable homicide". This contention is without merit since the trial court submitted to the jury the law with reference to excusable homicide or justifiable homicide committed by accident or misfortune in instruction No. 18, which clearly covered the defendant's theory of the case. The record discloses that he denied any express intent to shoot the deceased, or that he pulled the trigger, but to the contrary that he only intended to frighten the decedent out of his home and that the gun was accidentally discharged when the decedent grabbed the same and jerked it forward. The defendant relies upon the case of Anderson v. State, 90 Okla. Cr. 1, 209 P. 2d 721. But the Anderson case is not in point for the reason that the instructions given were entirely insufficient and there was a conflict between two instructions given. Instruction No. 14 in the instant case may be incomplete, but it certainly is not in conflict with instruction No. 18 which clearly covered excusable or justifiable homicide committed by accident or misfortune. Instructions are to be considered as a whole, and if, when so considered they clearly and concisely state the law, then the instructions are sufficient. Price v. State, 1 Okla. Cr. 358, 98 P. 447; Burroughs v. State, 80 Okla. Cr. 271, 158 P. 2d 723; Mayberry v. State, 94 Okla. Cr. 301, 238 P. 2d 362. The instructions herein as a whole were fair to the defendant and stated his theory not only in relation to excusable or justifiable homicide, but in relation to defenses which he did not expressly make, but which the evidence in some degree covered, to wit, the right of self-defense and defense of domicile.

The defendant's second proposition relates to the county attorney, on cross-examination of Mrs. Collier, asking the witness if she hadn't stated on a previous occasion, "my husband would not have shot him if he hadn't been drinking". This question called for a conclusion or expression of opinion from the witness. Generally, the opinion of a witness is not admissible to interpret the acts, conduct or language of another. Witty v. State, 150 Tex. Cr. R. 555, 203 S.W. 2d 212, 220. The lack of merit in this proposition, however, is quite apparent in face of the record. Frank Toews, who appeared for the state in rebuttal, was permitted without objection to state that Mrs. Collier on the way to the hospital with the decedent said, "my husband would not have shot him if he had not been drinking", and in view of the fact that Mrs. Collier volunteered the statement in the record, "it would not have happened if we had not been drinking". Furthermore, in face of the clear evidence of guilt, the error complained of would certainly fall within the classification of harmless error. Title 22, § 1068, O.S. 1951.

In the defendant's third proposition it is urged that the verdict is contrary to the evidence, contrary to the court's instructions, based upon conjecture, sympathy and conclusions, and is excessive in punishment, cruel and unusual when measured by the evidence and the court's instructions. In this connection the defendant cites numerous cases where modification has been had of the verdicts, judgment and sentence rendered therein. In any such cases this court has repeatedly held, before this court is authorized to modify a judgment of conviction by reduction of the punishment imposed, it must clearly appear that the punishment imposed is excessive, or was probably the result of passion and prejudice on the part of the trial jury or else that some substantial error of law has occurred at the trial prejudicial to the defendant in the amount of punishment imposed. Green v. State, 70 Okla. Cr. 228, 105 P. 2d 795. Shimley v. State, 87 Okla. Cr. 179, 196 P. 2d 526, wherein this court said:

"The power of this court to modify judgment by reducing punishment in furtherance of justice, is not the power to commute by the Chief Executive, since judicial power to modify a judgment, and executive power to pardon are distinct; one being an award of justice, another being an act of grace.

"Criminal Court of Appeals has the power to modify a judgment and reduce a sentence inflicted by the jury or trial court, but this power cannot be arbitrarily used and can only be exercised where it appears from the record that an injustice has been done in assessing the punishment upon the defendant."

Nothing appears in the record herein to support the proposition that the jury acted from passion and prejudice in inflicting the penalty herein imposed. Here, there was no justification for this killing. The defendant's defense was not predicated upon justification, but was based upon accident and misfortune. The record discloses that he made the statement when he was taken to jail, "I deserve all I get out of it". None of the conditions warranting modification of the judgment and sentence herein imposed exist which would justify us in disturbing the verdict of the jury. For all the above and foregoing reasons, the judgment and sentence is accordingly affirmed.

JONES and POWELL, JJ., concur.