## SMITH v. STATE.

No. A-11572. Sept. 10, 1952.

(248 P. 2d 262.)

Preston Moore, Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, J. Grady Jewell Smith was convicted in a trial before a jury in the county court of Payne county of the charge of selling intoxicating liquor, with punishment fixed at a fine of $50, and 30 days in the county jail. The case is here on appeal.

For reversal counsel urges two propositions:

"(1) That the evidence is insufficient to support the verdict of the jury and judgment of the trial court.

"(2) That the court erred in not instructing the jury upon the question of circumstantial evidence."

Reviewing the evidence we find that Mrs. Clara Whitaker testified for the state that she lived in the rural district from Cushing, Oklahoma. She stated that on January 30, 1950, her husband drove into the colored section of Cushing in front of the Savoy Sandwich Shop at 1118 North Central street. On cross-examination she stated that she was forced to accompany her husband, that she would not have gone if she could have had her way. She testified that when her husband, L. L. Whitaker, stopped his car she observed the defendant standing in front of the sandwich shop talking to companions. Defendant inquired of her husband as to what he wanted, and he told defendant that he wanted some drinking whiskey, and defendant turned and left, but came right back with a half pint of Hill and Hill whiskey in his coat pocket, and her husband paid him $1.75 for it. She further testified that she was sitting in the back seat of the car on the same side her husband was on, and that her son-in-law and daughter were in the car, and her husband asked her for the money to pay defendant, and she gave him a one dollar bill and some silver. She stated that defendant was not over three feet from her and that she observed him well.

The evidence shows that Mrs. Whitaker returned to Cushing two days later and on February 1, 1950, caused an information to be filed against the defendant; that she went with the officers to the Savoy Sandwich Shop operated by Josie and Joe Kelso and entered their living quarters in the rear where she found the defendant with the Kelsos and pointed him out to the officers as the person who sold the whiskey to her husband, and she stated defendant did not answer, but just "sauntered around unconcernedly." Counsel for defendant inquired of witness what prompted her to come back there two days later, and she answered:

"A. Because I told Josie at one time to quit selling my husband liquor. I said if she didn't, she would be up here. I wasn't doing it spitefully, but I just wanted to know what they—I told her when he got intoxicated he was hard to manage. I wasn't prejudiced against the colored race. In fact, I think the race is as good as the white race. If it had been a white establishment, it would have been the very same thing with me."

Witness was asked if the person who sold her husband the liquor was in the courtroom, and she pointed out the defendant.

The state next called L. L. Whitaker, the husband of the complaining witness. He admitted that he drove to the place charged and did purchase the half pint of whiskey from some colored boy, but stated that he did not observe his features and was unable to say whether the defendant was the person who sold him the whiskey or not. He stated that he got $2 from his wife and handed it to the colored boy, who handed him back twenty-five cents. Witness stated

that he had a $10 bill and did not figure the boy could change it, and therefore borrowed the $2 from his wife. Witness was asked if he knew about his wife going on a raid of the place where he purchased the whiskey, and he stated that the first he learned about it was when he read it in the paper.

The defendant testified that his home was in Kansas City, but that he came to Cushing in December to visit his fiance and was still there on January 30, 1950. He denied that he had ever sold any whiskey in his life. He stated that the morning the prosecuting witness, Mrs. Whitaker, came to the cafe with the officers that she stated:

"Well, she said that she walked three miles to town, and that she was told by God to do the things that she was doing—to clean up the town, and help clean up the town was the way she stated it."

Witness stated that he was in the Kelso living quarters "standing there talking" when Mrs. Whitaker and the officers beat in the back door and entered the house. He stated that he did not think he had been at Joe Kelso's before, but was urged by the county attorney to think hard about the matter. He then admitted he had been there before. On cross-examination witness stated that he was in front of the house sitting down, talking to Josie and Joe when the officers and prosecuting witness broke in the back of the house.

In this case there was a sharp conflict in the evidence. It would appear that there is nothing in this case to show the inapplicability of the rule adhered to by this court from beginning, as stated in Fry v. State, 91 Okla. Cr. 326, 218 P. 2d 643, 645, where we said:

"Where there is competent evidence to sustain the verdict of the jury the Criminal Court of Appeals will not interfere therewith even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

Counsel cites the case of Groves v. State, 23 Okla. Cr. 336, 214 P. 736, as controlling in this case, and to enable the avoidance of the above rule. Here there is a vast difference in the quality of the evidence for the state and the quality of the evidence in the Groves case. There the only witness for the state was a confessed professional bootlegger, who made all kinds of contradictory statements, and who was seeking to convict a fellow bootlegger.

As to the contention of error on the part of the court in failing to instruct the jury on circumstantial evidence, it is at once obvious that such an instruction was not required as the main evidence relied on by the state was that of the witness Mrs. Clara Whitaker, and her testimony was direct and positive. It was her testimony, as opposed to that of the defendant. She was supported by a number of corroborating circumstances, it is true. But this court has held that where the evidence of the state is both direct and circumstantial, the accused is not as a matter of right entitled to have the jury instructed upon the law of circumstantial evidence. Campbell v. State, 95 Okla. Cr. 396, 247 P. 2d 281; Scroggins v. State, 54 Okla. Cr. 54, 14 P. 2d 237; Lincoln v. State, 86 Okla. Cr. 415, 193 P. 2d 618; and Long v. State, 77 Okla. Cr. 174, 140 P. 2d 600.

It is significant that counsel did not request that any instruction be given covering circumstantial evidence; that he did not prepare and offer such an instruction, and did not object to any instruction given. See Teague v. State, 58 Okla. Cr. 239, 52 P. 2d 91.

The evidence set out and the authorities quoted compel the affirmance of the verdict and judgment appealed from.

BRETT, P. J., and JONES, J., concur.