# BREWER v. STATE.

No. A-11735.   April 1, 1953.

(255 P. 2d 954.)

Orval Grim, Sayre, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant Clyde Brewer was charged by an information filed in the county court of Beckham county with the unlawful possession of intoxicating liquor; was tried, found guilty by verdict of the jury, who left the punishment to be fixed by the court; thereafter, the defendant was sentenced to serve 90 days in the county jail and pay a fine of $350 and has appealed.

We shall consider the assignments of error in the order in which they·are presented in the brief of defendant. The first contention is that the trial court erred in overruling the motion to suppress evidence which was filed and presented prior to the commencement of the trial. This motion was based upon two grounds: First, the affidavit was made on information and belief, and was insufficient to authorize the issuance of a warrant. Second, the warrant described premises occupied by more than one family and was in law what is denominated a blanket search warrant.

The defendant in his brief does not point to any particular part of the affidavit which he contends was made on information and belief. Our examination of it discloses to us that it is not made on information and belief, but is positive in its terms. It fully meets the test of an affidavit as has been set forth by this court in numerous cases. Wagner v. State, 72 Okla. Cr. 393, 117 P. 2d 162; McCarthy v. State, 86 Okla. Cr. 51, 189 P. 2d 436; Young v. State, 74 Okla. Cr. 64, 123 P. 2d 294; Shiever v. State, 94 Okla. Cr. 37, 230 P. 2d 282.

The record does not support the contention that the premises described in the warrant covered the dwelling houses of two or more families. Several witnesses testified at the hearing on the motion to suppress evidence. The property described in the search warrant was 130 feet long by 100 feet wide, and located on it were two buildings. The building in front served as a combination filling station and dwelling house for the defendant and his family. A few feet to the rear of this building and on the premises described in the warrant, was a small, two-room building which the officers who made the raid testified appeared to be a storage room. However, in this building, on the night of the raid, were found several men engaged in playing poker, including the defendant Brewer. The defendant testified that he had employed Dean Howard to operate the service station while he and his wife made a trip to Kansas and that when he returned from Kansas, he made a deal with Howard to continue to operate the station and Howard was to receive 25% of the profits from the station and "was allowed to occupy a little two-room place behind the station". Under the testimony of the defendant the station and the business continued to belong to him and he furnished the money whereby Howard paid the bills. He further testified that Howard was dead at the time of the hearing and unavailable as a witness. Other witnesses testified to seeing Howard at the service station and that he was apparently operating the place. There was no evidence, however, that Howard had a family or that the small building where the gambling was being done was equipped as a home. The evidence was to the contrary. The trial court properly concluded that there was no justifiable basis for holding that the warrant described the private residences of several families. Upon any consideration of the case the evidence at least presented a question of fact for the determination of the court in connection with the motion to suppress and since there was competent evidence in the record to sustain the finding of the court, his judgment thereon will be sustained on appeal.

The next assignment of error is the proposition that the county attorney erred in cross-examining the defendant with regard to searches of his premises at other times than the one involved in the prosecution. Ordinarily, this assignment of error would have to be sustained. However, the defendant in his testimony, on direct examination, said that he had at one time been in the liquor business but that when he purchased the service station about 4 years before the date of the prosecution he had quit the liquor business and had not been engaged in any prohibitory liquor law violations during that period. In that connection, he denied the possession of the liquor which was found under the cover of the bed which he occupied in the building which was used as a service station. On cross-examination the county attorney asked specifically concerning two other occasions when the officers went to the premises and found intoxicating

liquor. These two occasions were during the period of time during which the defendant testified that he was not engaged in the whiskey business. By reason of the testimony of the defendant, he opened up the field for cross-examination by the county attorney, and having thus opened the question, he is not in a position to complain.

The same reasoning will apply to the testimony of Oscar Mullinex, which the defendant claims was improperly admitted. After defendant testified on direct examination that he had had nothing to do with the whiskey business during the past four years and that if the whiskey had been his he would have entered a plea of guilty, the county attorney asked him concerning whiskey which was found in a raid on November 18, 1950, which was just a week prior to the time of the raid which formed the basis for the instant prosecution. The defendant was evasive and would not answer the question. In view of the defendant's direct examination and his evasiveness on cross-examination, it became proper for the state in rebuttal to show by Oscar Mullinex that he had seized 15 pints and 12 half pints of whiskey, which was in the possession of the defendant just a week before the raid was made.

The last proposition concerns an instruction which was given to the jury, wherein the court advised the jury as follows:

"Gentlemen of the Jury you are instructed that since States Exhibit "1" to wit: seven ½ pints and one full pint of whiskey was admitted in evidence, that the defendant Clyde Brewer admits that he has removed one ½ pint of this whiskey and that said ½ pint of whiskey is no longer available as evidence in this case."

The record discloses that an unusual development occurred during the trial of the case and just at the close of the case. Seven one-half pints and one full pint of whiskey were identified by the officers and admitted in evidence. This whiskey was sitting on the counsel table at the time the court adjourned. When court convened, one of the one-half pint bottles of whiskey was missing. The county attorney sought to inquire of the defendant concerning the missing bottle of whiskey and defendant's counsel asked the court to excuse the jury while such inquiry was made. After the jury had been sent from the courtroom, the defendant, upon inquiry by the county attorney, testified that he took the half-pint of whiskey and drank it. His testimony in this regard is as follows:

"Q. Did you take that whiskey, Clyde, that was on the table? A. Yes, sir, it had my name on it and I thought it was mine. Q. What did you do with it? A. I drank it."

During our years of service on this court, we have never had a situation which has paralleled that which is here presented. An observant jury, of course, would notice that one of the bottles of whiskey was missing and they might think that the county attorney or one of the officers had taken it and thus be prejudiced against the state's case. We do not believe that it was reversible error for the court to inform them as to who had taken the bottle. It was very brazen effrontery on the part of the accused and, of course, such conduct should not be condoned in any manner. He showed an utmost disrespect for the court, the jury, his own attorney, and the laws of this state. We are unable to conclude that any of the assignments of error are of sufficient importance to justify or require a reversal of the conviction.

POWELL, P. J., and BRETT, J., concur.