L. W. WILEY, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12785.

Court of Criminal Appeals of Oklahoma.

Jan. 20, 1960.

Pierce, Pierce, & Brook, Paul Gotcher, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, L. W. Wiley, defendant below, was charged by information in the District Court of Muskogee County, Oklahoma, with the crime of embezzlement, 21 O.S.1951 § 341, while an assistant county attorney, in that he appropriated to his own use and benefit a sum alleged to be $294.75, paid to him by certain defendants as fines and costs and received by him on behalf of and for account of the City Court of Muskogee, Oklahoma. He was tried by a jury, convicted, and his punishment fixed at a $500 fine and imprisonment in the state penitentiary for one year. The trial court entered judgment and sentence accordingly and suspended the execution thereof. 22 O.S.1951 § 991. From the judgment and sentence thus imposed, this appeal is perfected.

The facts developed on the trial established that L. W. Wiley was deputy assistant county attorney and acted as such at the time as alleged, between August 25, 1956, and December 31, 1956. Between the alleged dates, the state's evidence discloses that Wiley, while so acting, was contacted by some seventeen persons who had been arrested by the Highway Patrol for traffic violations. At the time of their arrests, these seventeen persons were issued a summons to appear before the county attorney of Muskogee County on a day certain to answer the said summons. Before said appearance date they were charged by complaint in the City Court. The said persons appeared as directed and there met Mr. Wiley, assistant county attorney, when court was not in session. The parties were desirous of avoiding both delay and an appearance in court, so they inquired, in substance, if they might not ascertain the amount of the fines and costs, leave the same with defendant Wiley, let him enter pleas of guilty for them, and have him pay their fines with the money they provided for said purpose. They were informed they could do so and he agreed to accept their money for said purpose, and wrote some of them receipts therefor in his official capacity, stating therein that the money was for fines and costs for speeding, etc. Some of these receipts were introduced in evidence. State's exhibit 1, listing the case numbers of charges so filed in the City Court of Muskogee, Oklahoma, on dates ranging from August 24, 1956, to November 15, 1956, with the names of the persons charged thereunder and the amount the respective defendants paid, to be delivered into the court, was admitted into evidence upon defendant's stipulation that the amounts so listed were received by him from said defendants as set forth. These amounts ranged from the sum of $9 to $20. The money thus received by Mr. Wiley was not paid into the court, but was retained by him, apparently for his own use. Finally, the persons so affected were summoned by letter from Judge Bond, Judge of the City Court, to come and answer the charges pending in court against them. In that manner, the defalcations were discovered. After this prosecution was instituted, the defendant made restitution to the state.

The charging portion of the information reads as follows:

"That the said L. W. Wiley, then and there being the Deputy, Assistant County Attorney, of the County Attorney of Muskogee County, Oklahoma, a public officer of Muskogee County, Oklahoma, and while acting as such deputy, agent and employee of the County Attorney of Muskogee County, Oklahoma, was charged and entrusted and did receive certain public money and funds from the following persons and in the following amounts, to-wit:

(Persons and amounts omitted)

"and that said money and funds were received by the said L. W. Wiley on behalf of or for account of the City Court of Muskogee County, Oklahoma, a department of the County of Muskogee, State of Oklahoma, created by law, in which the people of the State of Oklahoma are directly interested, in that the said aforementioned persons did pay said sums of money to the said L. W. Wiley for the purpose of paying a fine into the City Court of Muskogee County, Oklahoma, for and arising out of a traffic violation wherein said persons were charged with said traffic violations in the City Court of Muskogee County, Oklahoma, and the said L. W. Wiley while acting as such deputy, and Assistant County Attorney as aforesaid, did then and there receive, collect and have and hold in his possession and under his control, by virtue of his employment, said aforementioned money and funds belonging to and received by him on behalf of or for account of the City Court of Muskogee County, State of Oklahoma, created by law, in which the people of the State of Oklahoma are directly interested in the sum of $294.75, and the said L. W. Wiley, being then and there charged and entrusted with said money and

funds as aforesaid, did, then and there without authority of law, and not in the due and lawful execution of his trust as such deputy as aforesaid, did wilfully, unlawfully, wrongfully, fraudulently, and feloniously convert and appropriate to his own use and benefit, and to a use and purpose not in the lawful execution of his trust, the said sum of $294.75, good and lawful money of the United States of America, with the wilfull, unlawful, fraudulent and felonious intent on the part of him the said L. W. Wiley, to embezzle the said sum of money contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

The statute under which this prosecution was lodged is 21 O.S.1951 § 341, the pertinent part of which reads as follows:

"Every public officer of the State or any county, * * * and every deputy * * * of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this State or any department of the government of this State * * * who either:

"First: Appropriates to his own use * * * without authority of law, any money or anything of value received by him as such officer, * * * or otherwise, on behalf of this State, or any subdivision of this State, * * * or,

* * *

"Fifth: Wilfully omits or refuses to pay over to the State, city * * * or their officers or agents authorized by law to receive the same, any money * * * received by him under any duty imposed by law so to pay over the same, shall upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed five hundred dollars, and by imprisonment in the penitentiary for a term of not less than one nor more than twenty years, * * *."

■ In Abernathy v. State, 69 Okl. Cr. 142, 101 P.2d 634, this Court distinguished this statute and the general embezzlement statute in the following language appearing in syllabi 1, 2, and 3:

"Embezzlement is defined by Oklahoma Statutes, 1931, Section 2037, 21 Okl.St.Ann. § 1451, as follows:

"'Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted.'

"Oklahoma Statutes, 1931, Section 2495, 21 Okl.St.Ann. § 341, is a special embezzlement statute, directed specially against any public officer of the state or any county, city, town, or member or officer of the Legislature and every deputy and clerk of any such officer.

"Under the above statute, the inference that one has embezzled property by fraudulently converting it to his own use may be drawn from the fact that he has not paid the money in due course to the owner, or from the fact that he has not accounted for the money which he has received. This is especially true where public officials have failed to turn over to the proper authorities public funds which they have collected by reason of their official position."

■ The defendant contends that the trial court erred in not sustaining his demurrer to the information, first because the information allegedly stated no public offense, and second, because it is allegedly duplicitous in that it enumerates each of the several defalcations maki.. up the total embezzlement. The cases cited by the state and the defendant on this point are not controlling. Either the wording of the statute or the facts involved renders them inapplicable.

Statutes covering various forms of embezzlement vary so much in their terms that embezzlement is, after all, what the statute defines it to be. The offenses defined by the statute and the classes of persons enumerated, the kinds of property covered, and the punishment provided for its un-

lawful taking must be gathered from the language of the statute itself. Upon this measure the first contention of the defendant must be determined. An analysis of the statutory language reveals the statute covers *every public officer* of the state, county, city, town, and every deputy of such officer, *and every other person who receives any money or other thing of value on behalf of or for account of this State or any department of government of this State* and in which this State or the people thereof are *directly or indirectly interested,* whether it was the officer's, deputy's, or person's duty or within his authority to do so, and such officer or person who either appropriates the same to his own use or the use of any person not entitled thereto as such officer, deputy, or otherwise, or wilfully *omits or refuses to pay over to the state, city,* etc., *any money or property so received by him under any duty imposed by law* so to pay the same is liable to conviction for embezzlement. It is apparent that the defendant was charged within the terms of the statute as one of those persons expressly covered by its provisions.

It is contended this money was not public money and that it must be such within the contemplation of the statute. We do not so read the statute. It says any officer, deputy or other person who receives on behalf or account of the state any money or other thing of value is under obligation to deliver the same to the state, and one who so receives money and does not deliver it to the state is guilty of embezzlement. We are not unmindful that there are numerous cases holding where the officer is not charged with the collection and safekeeping of public funds and he does so and appropriates them, there can be no embezzlement by him as such public officer. But this statute, as was said in Foster v. State, 18 Del. 111, 43 A. 265, 266:

"* * * is so framed as to include every case when any chattel, etc., is delivered to, or received, or taken possession of by the clerk or servant for, or in the name, or on account of

the master. * * * (A)nd the effect of this clause is to make the possession of the servant the possession of the master, whenever any property comes into his possession, within the terms of this clause, so as to make him guilty of embezzlement if he converts it to his own use [and benefit]."

To hold otherwise in the case at bar would create a condition where public office could become a badge for fraud and make of the state an instrument of chicanery for preying on trusting citizens. This statute is designed to cover just such situations and penalize those who prostitute public office and their positions of trust and confidence. While the question is not herein involved, we feel the statute is probably broad enough to cover anyone who assumes to receive any money or property for account of the state who does not in such assumed role deliver the same to the state but appropriates it to his own use.

But, under what duty of law was this defendant required to pay over the money? The record shows that he received the money as an agent of the state for a definite purpose, to-wit: to enter the defendants' pleas of guilty and pay their fines and costs into the public treasury. The money was impressed with a special trust character when received by him for the purpose as directed by the payors, for account of the state. Hence, he had a duty to carry out the obligation of trust created by his office and his express duty under the law by virtue of his office to pay over to the state any money received by him for its account. The information, in substance, so alleges.

The correct rule controlling such situations as this is stated in 29 C.J.S. Embezzlement § 10d, pp. 681, 682:

"Some statutes, instead of requiring that the property shall have been received by accused 'by virtue of his employment,' merely require that it shall have been received, 'for, or in the name or on account of,' the master or employer, and to constitute embezzle-

ment under such a statute as this, the property must have been received for, or on account of, the master or employer. Under these statutes a servant or an employee who fraudulently converts to his own use money or property received by him for his master or employer is guilty of embezzlement, although he may have had no authority whatever, expressed or implied, to receive the same."

Denton v. State, 77 Md. 527, 26 A. 1022. In Foster v. State, supra [18 Del. 111, 43 A. 269], it was said:

"* * * the gist of the offense charged is the breach of trust reposed in the class of persons enumerated in the statute, * * *."

The information in the case at bar alleges all the elements of just such an offense as is clearly defined by the statute. The trial court did not err in overruling the demurrer on the ground the same failed to state a public offense.

 As to the second ground of the demurrer, the same is wholly without merit. The information is not duplicitous in pleading the seventeen transactions aggregating the total of $294.75. The statute prohibits not the embezzlement of any particular item or fund but the embezzlement of any money or thing of value. But one offense is stated, notwithstanding the information pleads the individual items as a basis for the aggregate amount of the embezzlement. Such pleading is not necessary in cases of this character, but it was not error to plead the specific items, since so to do constituted merely a means of establishing the aggregate amount. The manifest purpose of the statute was to make a blanket provision covering the embezzlement "of any money received for or on behalf of or on account of this State." State v. Bunch, 23 Okl.Cr. 388, 214 P. 1093; Geyman v. State, 86 Okl.Cr. 348, 192 P.2d 707, holding:

"Public officer may render himself liable to prosecution for embezzlement of particular gross amount as constitut-

ing single offense by series of personal appropriations of small sums."

Hence, the trial court did not err in overruling the demurrer on the ground the information was duplicitous.

 The defendant contends that there was no proof that the moneys received were public moneys. This contention was disposed of in answer to his attack upon the sufficiency of the information. We repeat, the statute does not require that the money or thing of value be public property, but only that it be received by the public officer for, on behalf of, or for account of the state. The testimony of the persons imposed upon, the stipulation of the defendant, as well as the receipts executed by Mr. Wiley establish the purpose for which the money was received, but to the contrary, he appropriated it to his own use, or at least failed to pay it to the state, in violation of the statute. As was said in Foster v. State, supra, his possession under the purpose for which the money was received by him in his official capacity was the possession of the state. The evidence shows he violated his trust and was therefore guilty of embezzlement under the provisions of this statute.

The state's case was sufficient prima facie against the defendant's demurrer to the evidence by reason of the fact it has been repeatedly held:

"Where there is any competent evidence, reasonably tending to sustain the allegations of the information, the court should not sustain a demurrer to the evidence."

Smith v. State, 44 Okl.Cr. 254, 280 P. 317; Sasser v. State, Okl.Cr., 309 P.2d 1090. Moreover, the evidence was sufficient to sustain the conviction.

 The defendant further complains that a letter, dated January 14, 1957, written by Judge Bond addressed to defendant Wiley was admitted in evidence as state's exhibit six. The substance of the letter called to defendant's attention his having received money to apply on fines and costs from certain parties who were

given citations for traffic violations and against whom charges had been filed. It stated it became necessary that alias warrants be issued against them. Some of them responded and evidenced receipts issued by the defendant for moneys received for the purpose of settling the cases, the letter related. He was asked to pay the money into the court clerk, which he had not done, so that the records could be corrected and the cases disposed of. Over the defendant's objection and exception the letter was admitted into evidence. The defendant contended he did not receive the letter. This Court has apparently not passed on this point, but the Supreme Court of Oklahoma has. In Reeves & Co. v. Martin, 20 Okl. 558, 94 P. 1058, it was said:

"When a letter is sent by post or mail, properly addressed, the presumption of its receipt by the party to whom it is addressed arises, and this prima facie presumption of delivery remains until overcome by contradictory evidence."

22 C.J.S. Criminal Law § 598, p. 916. This letter had bearing on the issue and was clearly competent. Though the admission of the letter is predicated upon a rebuttable presumption, the issue so raised would present a question for the determination of the jury based upon conflicting testimony. National Aid Life Ins. Co. v. Parker, 191 Okl. 175, 127 P.2d 168. The admission of the letter in evidence was not error.

■ While Judge Bond was testifying in chief, the defendant sought to introduce a letter written by him to Judge Bond in which defendant transmitted a cashier's check in the sum of $281.75, covering the shortage as he viewed it. The defendant contends it was error for the trial court to sustain the state's objection thereto on the ground it was a self serving declaration. No proffer of the letter was made in the case made to preserve the matter and we are therefore not permitted under the law to pass on its admissibility or the propriety of its exclusion. It has been held:

"When an objection to the introduction of a writing is sustained, and it is intended to reserve the question as to the admissibility of such writing, it should be identified, offered in evidence, and included in the casemade, otherwise this court is unable to pass on its admissibility."

Ross v. State, 31 Okl.Cr. 143, 237 P. 469. The matter was not properly preserved for our consideration.

■ Next, the defendant contends the trial court committed reversible error in permitting the state to make inquiry about other cases with which the defendant stood charged other than the one on trial. This would have been a valid ground of objection had it not been for the defendant's counsel asking the following question on direct examination of the defendant:

"Q. Well, the only money that the County Attorney's office or anyone else has ever suggested that you were responsible for, I take it then, are the moneys that are represented here and set forth in this indictment? There is no other suggestions from anybody that there are any other moneys involved. This is the only thing that you know about that has been talked about here in this trial? In other words, you responded with a cashier's check, that's what you did, didn't you?

"A. Well, Mr. Pierce, I had no alternative but to do that. I could not— I didn't have any explanation. Mr. Cannon said they couldn't find the money and I had given them a receipt— most of them. Some of them testified yesterday that I didn't give them a receipt, but whether I did or not, I still paid it."

It is apparent that the foregoing question and answer was intended to leave the impression with the jury that other than this case, Mr. Wiley was without stigma of wrongdoing in connection with any other money received by him as assistant county attorney. Hence, the matter was opened up by himself. On cross examination he

admitted that he was charged in other cases. This was proper cross examination. Fields v. State, 85 Okl.Cr. 439, 188 P.2d 231. It was matter that certainly went to his credibility. As we said in Brewer v. State, 96 Okl.Cr. 374, 255 P.2d 954, 956:

"* * * he opened up the field for cross examination * * * and having thus opened the question, he is not in a position to complain."

98 C.J.S. Witnesses § 395, p. 175, note 57. Moreover, the rule announced in People v. Hopper, 145 Cal.App.2d 180, 302 P.2d 94, 95, applies:

"A defendant may be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief as well as to facts which he expressly states."

The inquiry having been opened up by the defendant's counsel, the state's pursuit of the same on cross examination under the law is not error.

 The defendant contends the trial court erred in not giving his three requested instructions. We have examined the said instructions and find that they do not correctly state the law under the terms of this statute. The statute dealing with embezzlement by a public officer, deputy, etc., of money received by him for account of the state is a special statute, and under its terms one is not charged with a misappropriation of any particular item or fund, but is charged with the misappropriation of any and all funds received by him for the state in violation of his trust as public officer. Lyon v. State, 68 Okl.Cr. 396, 100 P.2d 287. Under this statute the law infers that property which the officer does not account for has been appropriated to his own use and benefit. State v. Duerksen, 8 Okl.Cr. 601, 129 P. 881, 52 L.R.A., N.S., 1013. Hence, an instruction as requested stating, in substance, a mere failure to report and pay over alleged funds is not sufficient to sustain a conviction of the crime of embezzlement is not the law. The trial court did not err in refusing to so instruct the jury.

Nor is an instruction limiting the applicability of this statute to public funds necessarily erroneous since the statute covers both public funds as such and any money or other thing of value received by one while acting under color of public office or otherwise in the represented capacity of agent to receive the same for account of the State of Oklahoma. Under the terms of this statute and the facts of this case, an instruction in effect treating the funds as public funds was not erroneous.

It would have been a rank contradiction of the defendant's stipulation that he received the money of seventeen persons as charged and then instruct the jury that if they believed the money had been lost or stolen from the files by someone other than the defendant, then he should be acquitted. The law did not require him to put the money in the files but to pay it over to the state and account to it for the same. The defendant's contention someone else could have misappropriated the funds is mere conjecture. The evidence shows he was the one who received the funds and was in charge of them and failed to account therefor. He cannot shift the inference of guilt to someone else by mere conjecture. Smith v. State, 61 Okl.Cr. 427, 69 P.2d 394. Such instruction in face of the stipulation, the law, and the evidence would have been highly confusing and the trial court did not err in refusing to give the same.

The defendant likewise complains of the trial court's instruction 3A, to the effect that when a public officer receives public money and does not pay over the same to the state, there is a legal inference that he has converted the same to his own use. This instruction correctly stated the law in terms of the rule announced in Abernathy v. State, supra, and Lyon v. State, supra.

 Instruction 5, while based upon the provisions of 21 O.S.1951 § 1454, embezzlement by trustee, was not prejudicial to the defendant in view of his position of trust as agent of the state to receive the same. Moreover, the language of the instruction

**40**

constituted a general definition of embezzlement, which is basic in all embezzlement cases, whether the action be founded on the general statute or a special statute as 21 O.S.1951 § 341. The instruction merely defined embezzlement in general terms and correctly states the law as to the relation of the parties necessary to constitute one an embezzler. Lyon v. State, supra. To so instruct was not error.

▮▮▮▮ Instruction 8 is objected to in that it assumes the money received was public money, without defining "public money". We have heretofore indicated it is immaterial under this statute whether these funds were public funds, but only necessary that they be received for account of the state by either a public officer, etc., or any other person, and are appropriated to the use and benefit of the one so receiving them, or where such a one fails to pay the same over to the state. That is the gravamen of the offense as defined by § 341, supra. In any event, the failure of the court to define public money in absence of a request so to do is not error. Thompson v. State, 26 Okl. Cr. 121, 222 P. 568; Logan v. State, 42 Okl.Cr. 1, 274 P. 39. Nevertheless, we believe that when Mr. Wiley, as agent of the state, received this money under the circumstances herein, these were public funds. He could not change the purpose of their receipt or vary the trust nature of their keeping, or alter his obligation in relation thereto through the hocus pocus of embezzlement. It was held in Hays v. State, 22 Okl.Cr. 99, 210 P. 728, that fines collected by the Clerk of the Court were public money even though they never reached the public treasury. Apparently it was an old custom to permit the practice of the county attorney or his assistants, as an accommodation to traffic violators, to handle cases in this manner. Hence, the defendant was by custom impliedly authorized to do so. Certainly under such conditions the defendant was acting in the capacity of agent of the state, and as such held in trust for the state the funds the defendants paid as fines and costs in the traffic cases. In Waldock

v. State, 42 Okl.Cr. 331, 276 P. 509, this Court said in syllabus 1:

"Where an agent or trustee is charged with embezzlement of funds belonging to the county, he cannot be heard to say that such funds were unlawfully acquired by him as such agent or trustee. If he was agent enough to receive the funds belonging to the county, he was agent enough to be punished for embezzlement of said funds, as against the defendant the county is the rightful owner of the funds, it matters not what the rights of others may be."

Greenwood v. State, 57 Okl.Cr. 271, 47 P. 2d 885. The funds herein were impressed with a trust for the State of Oklahoma when they were received for account of the state under the conditions heretofore set forth. Hence we cannot see how the defendant was prejudiced by instruction 8.

▮▮▮ Instruction 9, while repetitious of instruction 6 as to the penalty for embezzlement, was harmless in the face of the record and stipulations as to the receipt of this money by the defendant and the clear evidence of defendant's guilt. It did not infringe upon any substantial right or deprive the defendant of any right. In both instructions the penalty was correctly stated. Nor was it prejudicial that the jury was advised he would not be able to hold any public office again if found guilty. It would be doubtless urged as error if they had not been so informed. The law so provided and it was not error to so inform them. It has been held that repetition of the punishment assessable in the instructions is harmless error. Allen v. State, 122 Tex.Cr.R. 186, 54 S.W.2d 810; Pool v. State, Tex.Cr. App., 57 S.W.2d 1118. This contention is without merit.

In light of what has been said about the necessity of these funds either being or not being public funds the objection to instruction 10 for not confining the charge to public funds is without merit. The instruction covered money received by the defendant as an agent of the state for account of

the state. This instruction was in substantial conformity to the statute.

■ The contention that the trial court erred in not instructing on circumstantial evidence is neither supported by the authorities nor the record. The evidence herein is both direct and circumstantial. It has been repeatedly held that under such conditions the defendant is not entitled as a matter of right to an instruction on circumstantial evidence. Smith v. State, 61 Okl.Cr. 427, 69 P.2d 394; Smith v. State, 96 Okl.Cr. 25, 248 P.2d 262. The instructions, while not a model as to form, when viewed as a whole constitute a substantial statement of the law and are sufficient. Collier v. State, 96 Okl.Cr. 32, 253 P.2d 568.

■ Finally, the defendant contends that the jury's verdict was not in proper form and insufficient to support the judgment and sentence. The verdict reads as follows:

"We, the jury in the above action, duly impaneled and sworn, upon our oaths, find the issues in favor of the Defendant guilty of embezzlement and fix his punishment at $500.00 and one year in the penitentiary and the jury recommends suspection of the one year."

Before the jury was discharged, the defendant was given an opportunity to poll the jury. No objection to the form of the verdict was raised except to call to the court's attention the misspelling of the word suspension. A request should have been made for the jury to reconsider its verdict, but none such appears in the record. In Smith v. State, 83 Okl.Cr. 392, 177 P.2d 523, we said:

"Where verdict is irregular in form but is not objected to at time it is returned, and court given opportunity to have jury correct it, evey intendment will be indulged to uphold it, and, where from examination of verdict and entire record intent of jury as expressed in verdict may be clearly ascertained, it will be upheld."

■

Indulging every intendment in favor of this verdict, the jury's intention is clearly ascertainable. The verdict is therefore not fatally defective for informality. Moreover, the judgment imposed is in keeping with that intendment of the jury, except for the additional suspension of the $500 fine which was not within the jury's intention but was within the trial court's power. 22 O.S.1951 § 991. The trial court is not authorized by law to suspend part of the penalty and enforce another part. The judgment and sentence, if suspended, must be suspended in its entirety. State v. Smith, 83 Okl.Cr. 188, 174 P.2d 932; Campbell v. State, Okl.Cr., 287 P.2d 713. The judgment is even more favorable than the jury intended, to which the defendant will not be heard to object.

The judgment and sentence is accordingly affirmed.

POWELL, P. J., and NIX, J., concur.