SAMUEL DORRIS v. STATE.

No. A-4327.     Opinion Filed June 7, 1924.
(226 Pac. 590.)

(Syllabus.)

1. Trial—Instruction as to Burden to Show Mitigation or Justification Approved. Upon a trial for murder it is not error for the trial court to instruct the jury that "The commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or ex-

cusable," when the killing is proved or admitted by the defendant and the plea of self-defense is interposed as in this case, where the court further properly instructs the jury on the presumption of innocence and that the burden is upon the state to prove the defendant guilty as charged in the information beyond a reasonable doubt.

2. **Evidence—Presumption of Innocence as Fixing Burden of Proof.** The presumption of innocence fixes the burden of proof in the first instance, and designates the party whose duty it is to produce evidence and effect persuasion.

3. **Homicide—Evidence Sustaining Conviction of Manslaughter in First Degree.** In a prosecution for murder, evidence held to sustain a conviction of manslaughter in the first degree.

4. **Trial—Weight of Evidence for Jury.** The weight of the evidence is for the jury.

Appeal from District Court, McIntosh County; G. M. Barrett, Special Judge.

Samuel Dorris was convicted of manslaughter in the first degree, and he appeals. Affirmed.

J. G. Harley and J. W. Robertson, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case charges Samuel Dorris and Mary Dorris, his wife, with the crime of murder, for the killing of Mrs. Flora E. Green. Upon his separate trial the jury returned a verdict finding Samuel Dorris guilty of manslaughter in the first degree and fixing his punishment at imprisonment in the penitentiary for the term of 10 years.

The court after denying his motion for a new trial on December 8, 1921, pronounced sentence upon him in accordance with the verdict. He has appealed from the judgment, and alleges error in the admission of evidence, error in the instructions to the jury, and that the verdict was contrary to law and the evidence.

It appears that the deceased, Mrs. Green, was a tenant on land owned by appellant's father. Appellant and his family lived on the place in a house 200 or 300 feet from his father's house, and about a quarter of a mile from the house occupied by the deceased and her children. On Sunday evening, August 15, 1920, the deceased and her 13 year old daughter, Pearl Green, were returning to their house on horseback; both riding the same horse. Appellant and his wife were standing by the roadside in front of their home, and appellant's wife stepped out, stopped the horse by taking hold of the bridle, and questioned the deceased about something she had said to appellant's mother. During the conversation the shooting occurred. Four or five shots were fired, killing Mrs. Green, and four gunshot wounds were found on the body, two of which were in the back.

The testimony of Pearl Green makes out a case of cold-blooded cowardly assassination. She states that when Sam Dorris fired the first shot her mother jumped off the horse and pulled her off; then he shot her again; that she ran to the other side of the horse and he shot her again; then she ran up the road, and he followed her and shot her again; that Mrs. Dorris was holding the horse while he was shooting; that her mother was not armed, and did not have a gun or a pistol at the time of the shooting or at any other time that day.

J. H. Carter testified:

"I was living a half quarter west from Sam Dorris, I rode by his house horseback. He was in the front yard. I passed the time of day, and about 75 yards further on met Mrs. Green. Immediately after loud talking behind me attracted my attention. I looked and saw Mrs. Dorris holding the bridle of Mrs. Green's little roan horse, and Sam Dorris crossed the road. Then I heard the gun fire. Mrs. Green's

horse ran backwards, and she jumped off, and the little girl fell off some way. There were four or five shots. Mrs. Dorris hollered for me to come back.''

Andrew Bobbitt testified:

''I was behind Sam Dorris' barn when the shooting occurred. Just before the shooting I saw Mrs. Sam Dorris holding the bridle rein of Mrs. Green's horse, and I heard her say, 'Get down off your horse; we are going to whip you.' In about two minutes I heard five shots fire.''

J. B. Hollaway testified:

''I lived in a house near appellant's father and about 300 yards from appellant's house. I had been to Sunday school and stayed for singing in the afternoon. I had reached home and was helping my wife to get out of the wagon when I heard five shots, all sounded alike. I ran for about 100 yards, and heard Pearl Green say to an older sister who was coming through the pasture, 'Sam Dorris has killed mama.' I went on and saw Mrs. Green's body lying in the road. Sam Dorris was in his yard and called me. I went in, and he said, 'I take you to be a friend of mine and I want you to hold this gun until the sheriff comes and turn it over to him.' He said it was Mrs. Green's gun.''

On the part of the defense, Ott Tackett testified:

''I was standing in the brush near the barn with Andrew Bobbitt and heard the shooting. The first shot was from a large gun. I think it took about five minutes to fire the five shots; I heard Mary Dorris say, 'Stop and get off your horse; we are going to whip you.' Mrs. Green says, 'No; turn me loose and let me go on,' and the shooting commenced.''

D. Lee testified:

''Saturday evening Mrs. Green said something was bothering around the house at night and I gave her my gun, a 38 Colt's special, six chambers, all loaded. Appellant's wife is my sister.''

As a witness in his own behalf, the defendant testified:

"When Mrs. Green rode up my wife says to her, 'I want to have a talk with you,' she says, 'About what?' My wife says, 'About calling Mrs. Dorris, my mother, a God damn bitch and coward,' and she says, 'She is a God damn bitch,' and from some place in her riding skirt she drew. this six-shooter, I hollered, 'for God sake put that gun up.' Instead of that she turned and fired and slipped off the horse. I jerked my pistol from under my shirt and just as quick as I could I went to firing. When she pulled the gun the little girl got off the horse and started away crying. My wife ran down the road with Mrs. Green after her, and as she passed by me I told her not to shoot. I followed I judge twenty or thirty steps, my wife went to turn and fell down; then Mrs. Green turned on me with that gun, and I fired the fatal shot. Mrs. Green fell, and I picked up the gun she had. My wife called Mr. Carter, but he went on towards home. Mr. Hollaway came up, and I said, 'Here is Mrs. Green's gun, and I want you to take it and turn it over to Sheriff McCune.' I did not go back to the body after I got the gun. I shot Mrs. Green because I honestly believed she was going to kill my wife."

Counsel for appellant in their brief say that appellant is practically resting his case on the alleged error of the court in giving an instruction which is a quotation verbatim of section 2719, Comp. Stats. 1921. They further say:

"We recognize the fact that this court has passed squarely on this question in Boswell v. State, 8 Okla. Cr. 152, 126 Pac. 826; Lumpkin v. State, 5 Okla. Cr. 488, 115 Pac. 478; Hawkins v. U. S., 3 Okla. Cr. 651, 108 Pac. 561, and other cases holding that this instruction is not erroneous because it is couched in the exact language of the statute."

The section in question reads:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it,

devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." Section 2719, Comp. Stats. 1921.

It is the well-settled rule that this does not mean that the defendant must prove such circumstances by a preponderance of the evidence, but that the presumption that the killing was felonious arises from the mere proof of the commission of the homicide by the defendant, and the burden of proving circumstances of mitigation, etc., thereby devolves upon him. The defendant is only bound under this rule to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense. It can make no difference whether this reasonable doubt is the result of evidence on the part of the defendant, tending to show circumstances of mitigation or that justifies or excuses the killing, or from other evidence coming from him or from the state.

The universal rule that a defendant shall not be convicted unless the evidence proves his guilt beyond a reasonable doubt applies to the whole and every material part of the case.

The statutory rule does not attempt to provide the degree of proof required of him, but leaves the rule as to the degree of the evidence necessary to convict as it was before. In this connection the court further instructed the jury as follows:

"You are instructed that if you believe from the evidence, or have a reasonable doubt thereof, that it reasonably appeared to the defendant, Samuel Dorris, situated as he then was, that he and his wife, or either of them, were in danger of losing their lives, or of receiving great bodily injury at the hands of the deceased, and that he inflicted the wounds which caused the death of the deceased in order to

protect himself and his wife, or either of them, from the threatened danger, then the homicide would be a lawful one, and it would be your duty to acquit the defendant, unless you believe from the evidence beyond a reasonable doubt that the defendant was the aggressor.''

"The defendant is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt, and this presumption continues until every material allegation in the information is proven by competent and legal evidence, to your satisfaction, beyond a reasonable doubt.''

"If, therefore, after a careful comparison, weighing, and consideration of all the evidence in the case, you entertain a reasonable doubt of the guilt of the defendant, in that event you will resolve that doubt in favor of the defendant and acquit him.''

"The burden is upon the state to prove the defendant guilty as charged in the information beyond a reasonable doubt, and if the evidence fails to satisfy your minds beyond a reasonable doubt of the guilt of the defendant, then it is your duty to give the defendant the benefit of such doubt and acquit him.''

The weight of the evidence was a question for the jury under the instructions of the court which gave appellant the benefit of all reasonable doubt.

We have seldom read a record in a homicide case where there were less palliating circumstances in behalf of the defendant than this case presents. Under the evidence he might well have been convicted of murder.

Finding no error in the record, the judgment of the lower court is affirmed.

MATSON, P. J., and BESSEY, J., concur.