HENRY SAULSBURY v. STATE.

No. A-10586.   Sept. 4, 1946.

(172 P. 2d 440.)

8

Robert Burns, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, J. The defendant, Henry Saulsbury, was charged in the district court of Tulsa county with the crime of murder. He was tried, convicted of manslaughter in the first degree, and his punishment assessed at a term of 20 years in the State Penitentiary, and he has appealed.

It was charged that the defendant shot and killed one Jack B. Bradshaw, at the Bomber Inn, a beer and dance tavern, in Tulsa county, on the night of March 3, 1944.

For a reversal of this case, the first assignment of error is:

"The trial court erred in giving instruction No. 9 for the reason that it shifted the burden required of the state to the shoulders of the defendant to establish his plea of self defense or justification for the homicide."

The instruction complained of was as follows:

"You are instructed that upon a trial for murder where the commission of the homicide by the defendant is proven beyond a reasonable doubt, the burden of prov-

ing circumstances of mitigation or that justify the homicide devolves upon the defendant, unless the proof on the part of the prosecution amounts only to manslaughter or that the defendant was justified; but where such burden of proving circumstances that mitigate or justify the homicide devolves upon the defendant under this instruction, you are instructed that the amount of evidence necessary for that purpose is fixed by law as being such as is sufficient to create in your minds a reasonable doubt upon this issue, and if the evidence offered by the defendant to mitigate or justify the homicide where it is the duty of the defendant to do so under these instructions is strong enough to create in your minds a reasonable doubt as to his guilt of the crime charged in the information then it would be your duty to acquit him."

In attempting to support this contention, the defendant in his brief says:

"We believe that the general rule as laid down by this court and all others of which we have any knowledge is clearly and correctly expressed in [Criminal Law] section 566, page 881, 22 C.J.S., as follows:

" 'Subject to the exceptions appearing 'in the sections 571-578 infra, and except in so far as a statute establishes a different rule, the burden in a criminal case, whether for misdemeanor or felony, is on the prosecution to establish the guilt of the accused, beyond a reasonable doubt, that is, to prove every essential element of the crime charged, every fact and circumstance essential to the guilt of the accused, as though the whole issue rested on it.

" 'Subject to the exceptions referred to above this burden rests on the prosecution at every stage of the trial and never shifts, not even when the prosecution has established a prima facie case.' "

It will be noted that the text recognizes certain exceptions to the general rule announced, especially where

a statute establishes a different rule. We have such a statute in Oklahoma. Tit. 22 O.S. 1941 § 745 is as follows:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

It will be observed that the first part of instruction No. 9 is exactly in keeping with the above statute, and closely follows the wording thereof. The latter part of the instruction is the application of the law announced in the section as construed by this court in many prior decisions. Dorris v. State, 27 Okla. Cr. 208, 226 P. 590; Boswell v. State, 8 Okla. Cr. 152, 126 P. 826; Lumpkin v. State, 5 Okla. Cr. 488, 115 P. 478; Hawkins v. United States, 3 Okla. Cr. 651, 108 P. 561; Patton v. State, 55 Okla. Cr. 92, 25 P.2d 74; Culpepper v. State, 4 Okla. Cr. 103, 111 P. 679, 31 L.R.A.,N.S., 1166, 140 Am.St.Rep. 668. See, also, People v. Milner, 122 Cal. 171, 54 P. 833, and People v. Matthai, 135 Cal. 442, 67 P. 694.

In the case of Hawkins v. United States, supra [3 Okla. Cr. 651, 108 P. 566], Judge Richardson, in construing the above statute and speaking for this court, said:

"To make a prima facie case of murder under this statute the prosecution is required to prove only two facts; namely, the death of the deceased, and the fact that he was killed by the defendant. If each of these facts is proved beyond a reasonable doubt, and without disclosing facts sufficient to raise a reasonable doubt as to whether the homicide was only manslaughter or as to whether it was justifiable or excusable, then prima

facie the defendant is proved guilty of murder. Thereupon the burden of proof shifts to the defendant; and to discharge it he must produce evidence sufficient in quality and quantity to raise a reasonable doubt, either as to the degree of the homicide, or as to whether he was justifiable or excusable, failing in which a conviction for murder is warranted. If, however, the defendant does produce evidence sufficient to raise such reasonable doubt, then the burden returns to the prosecution, and to warrant a conviction for murder it must overcome such doubt thus engendered by proof beyond a reasonable doubt of the existence of each essential element of the crime."

A very full and complete review of the terms of this statute appears in the case of Culpepper v. State, supra, and in which the cases from California, the state from which this statute was adopted, are reviewed and instructions similar to the instruction here involved were upheld. We refrain from quoting from these cases, but they are directly in point as to the issue here involved.

We are, therefore, of the opinion that the court did not err in giving instruction No. 9, and that it did not place the burden of proof upon the defendant greater than the statute provided.

Defendant's second assignment of error is:

"The trial court erred in permitting the county attorney to make improper statements not supported by the record over the objections of counsel for the defendant."

The record in this case contains the entire argument of the assistant county attorney, counsel for defendant, and the closing argument by the county attorney. We have carefully read these arguments, and have found nothing therein that would justify a reversal of this case.

The statement of the county attorney with reference to the arrest and conviction of defendant in Kansas City was denied by defendant, but defendant admitted that he had remained in jail in Kansas City for a period of five months; and the record in the case of this same defendant (Salisbury v. State, 80 Okla. Cr. 13, 156 P.2d 149, decided by this court on February 14, 1946) reveals that this defendant was convicted in Kansas City, Mo., and served a sentence on the identical charge to which reference was made by the county attorney.

It is next contended that:

"The punishment inflicted by the verdict of the jury was excessive and not justified by the evidence."

The record here reveals that on March 3, 1944, about 8:30 in the evening, Jack B. Bradshaw, age 22 years, and J. L. Beard age 21 and Dean Beard age 18, who were nephews of Bradshaw, went to the Bomber Inn, a beer and dance tavern, in Tulsa. On the way they stopped at a beer tavern and drank some beer, and had purchased a pint of whisky which they took to the Bomber Inn. The defendant was at the Bomber Inn when they arrived, but none of them knew him, and the defendant did not know any of them.

While at the Inn, the Beard boys and Bradshaw became noisy, and were told by the manager that they were not allowed to drink there, and asked to leave. Dean Beard went to the restroom, and J. L. Beard and Jack Bradshaw started to the door. The evidence is conflicting as to just what happened, and the manner of their exit, but it is pretty well established that J. L. Beard went out of the door first, the defendant was second, and the deceased Jack Bradshaw was third; and that Dean

Beard reached the door about the time the shooting started.

J. L. Beard testified that after he was out of the building, he looked around for his uncle, and saw the defendant walking between them. That defendant immediately pulled a gun, and witness grabbed him, and, "the gun exploded right in my face," but it did not hit him. The witness released the defendant and ran into a field northwest of the Inn, and as he ran, he heard two more shots fired. His uncle and the defendant ran around to the rear of the Inn, and when witness looked back he saw the defendant bending over Bradshaw, hitting him with his gun, and heard his uncle say: "Please do not shoot me any more." The defendant left the scene, and the witness went to his uncle, and he and his brother placed him in their truck and left. They drove about one block, and stopped at an ice cream parlor and called an ambulance, and Bradshaw was taken to a hospital. His testimony was corroborated by his brother, Dean Beard.

The evidence reveals that Bradshaw died about three or four hours after reaching the hospital, as a result of the gunshot wound.

There is some uncertainty as to just why this shooting occurred, but if the testimony of the witnesses J. L. Beard and Dean Beard is true, the defendant was guilty of murder.

It was the contention of the defendant that J. L. Beard had invited him outside to take a drink; that he had a large sum of money on his person which had been seen by the three boys when he paid for beer in the tavern; that when they got on the outside they went

to the side of the building and he started to take a drink of the whisky, then refused it, and when he did, the deceased pulled a gun on him and told J. L. Beard to take his money. He admitted firing the three shots, but thought his life was being threatened.

No firearms of any kind were found on or near deceased, and no shots were fired by him. The pistol used by defendant was retained by him, and was not produced at the trial. Defendant's explanation as to why he was carrying the gun on the night of the difficulty was, to say the least, unsatisfactory.

The jury assessed the punishment in this case, and there is nothing in the record that would justify this court in modifying the judgment and sentence, especially in view of the records of this court, which reveal that this same defendant had on appeal to this court a case in which he had been convicted of robbery with firearms after former conviction of a felony, and sentenced to serve a term of ten years in the State Penitentiary. Salisbury v. State, 80 Okla. Cr. 13, 156 P.2d 149, 152. In that case it is stated:

"As a part of the state's case, counsel for defendant stipulated that defendant had been convicted in Oklahoma City of the crime of grand larceny in 1934, as alleged in the information. In addition to this conviction, the defendant admitted in cross-examination that he had been convicted of felonious assault in Kansas City, Mo., and had been convicted of grand larceny in Texas."

At the time of the oral argument of this case, attention was called to certain remarks of the trial court in which he stated that he was running the court and that he was not going to permit anyone to tell him how to run it, and to the application filed by defendant to

disqualify the court in this case after he made such remarks.

The record reveals that any remarks made by the court were made before the jury was impaneled in this case, and at a time when the court was considering the question of setting aside a bond given by the defendant. This occurred at a hearing before the court on Monday, June 12th, and at that time the case was continued until June 15th, at which time the jury was impaneled and the trial begun. On that date a written motion was filed to disqualify the trial judge and an affidavit of the attorney for defendant was attached thereto, setting forth the statement of the court made on June 12th, and stating therein:

"That at the time the said proceedings were had, all the available jurors then in attendance at the district court of Tulsa county, Oklahoma, were in the court room of the said judge for the purpose of being called as jurors in the case referred to in the motion or application attached hereto. And, that said jurors heard or should have heard all the statements made by the Honorable S. J. Clendinning presiding, all of which statements are more fully set out in 'Exhibit A' set out in the said motion."

This motion was overruled by the court and the case proceeded to trial on that date.

Counsel in their brief recognize the rule that this was a matter largely within the discretion of the trial court. From an examination of the record, we do not find that in overruling this motion the court abused this discretion. There was nothing to indicate that the defendant failed to receive a fair and impartial trial. The remarks were made to counsel for defendant three days

16

prior to the impaneling of the jury, and although the affidavit attached to the motion states that some of the regular jurors were in the courtroom at the time the remarks were made, it cannot be found, in the absence of proof, that defendant was prejudiced by the remarks. Counsel had the right to, and no doubt did, question the jurors with reference to whether they heard the statement made by the court, and as to whether or not they were prejudiced thereby. If any prejudice appeared, he had the right to challenge the juror so prejudiced.

It may be stated that counsel who appear for defendant in this court did not participate in the trial of this case, and they have filed a strong brief in his behalf.

For the reasons herein stated, the judgment of the district court of Tulsa county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.