## LEE v. STATE.

No. A-11679. Nov. 26, 1952.

(250 P. 2d 883.)

Ed Shipp, Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen. for defendant in error.

POWELL, J. The defendant (plaintiff in error) was charged by information filed in the district court of McCurtain county with a crime of murder. He was tried before a jury and convicted of the crime of manslaughter in the first degree, and sentenced to serve 20 years in the State Penitentiary at McAlester. Defendant had been tried once before. There had been a mistrial. The jury had been unable to agree.

Counsel for reversal urges four propositions, as follows:

1. "That the trial court committed error in allowing I. C. Sprague to appear and prosecute this action in the name of the State of Oklahoma, without having filed the oath of office required by law.

2. "That the trial court committed error in admitting evidence of witnesses adduced at a former trial when said evidence had not been transcribed and filed with the court clerk of McCurtain County, Oklahoma; and in not allowing counsel for the defendant to have a reasonable time in which to study said evidence and prepare to refute same.

3. "That the trial court committed error in instructing the jury.

4. "That the punishment assessed by the verdict and sentence imposed by the court and jury is excessive, harsh and the result of passion and prejudice on the part of the jury."

Considering proposition one, we find that the court entered an order on January 26, 1951, finding that the regular county attorney, (newly elected) of McCurtain county was disqualified to represent the state in the prosecution of the within case, in that prior to his election to office he had appeared in the case as one of defendant's attorneys. The information had been filed on April 14, 1950, by the then county attorney, I. C. Sprague. The court in the order appointed I. C. Sprague (whose term of office as county attorney had expired on the second Monday in January, 1951), special county attorney to appear and prosecute the cause in the name of the State of Oklahoma. This is authorized by Tit. 19 O.S. 1951 § 187. Of course, the special county attorney, although lawfully

appointed by proper order of the trial court, could not lawfully perform any of the duties incumbent upon him until he first qualified as provided by law. Dodd v. State, 5 Okla. Cr. 513, 115 P. 632; Bethel v. State, 8 Okla. Cr. 61, 126 P. 698; Hisaw v. State, 13 Okla. Cr. 484, 165 P. 636, 639.

Apparently the first official act of I. C. Sprague, under the special appointment, was to be the actual trial of the case which eventually was set for June 11, 1951, at which time Mr. Shipp, one of the attorneys for defendant, objected to the appearance of I. C. Sprague as prosecutor "for the reason that the said I. C. Sprague has not filed *an* oath of office as required by the laws of the State of Oklahoma." Thereupon, the special county attorney presented to the court the regular oath of office prescribed by Art. XV, § 1 of the Constitution of the State of Oklahoma, for state and county officers to be subscribed to before entering upon the duties of their respective offices. It was properly signed and sworn to before the county clerk. Upon filing the following took place:

"By Mr. Shipp: Let the record show that the oath of office was filed about 9:15, after the case was called for trial, and comes now the defendant and still objects to I. C. Sprague appearing as county attorney in this case for the reason that the oath of office required by law has not been filed as required by law.

"By the Court: Overruled, exceptions allowed.

"By Mr. Shipp: It is stipulated by and between I. C. Sprague, who appears as special county attorney, and the defendant, that the oath of office filed in the office of the county clerk at 9:15 on this date, June 11 1951, is the *only* oath of office that he has filed as special prosecutor or special county attorney in this case, and that no other oath or affidavit by I. C. Sprague has been filed in this case.

"By the Court: Due to the disqualification of the present county attorney, Bascom Coker, the Court having heretofore appointed I. C. Sprague as special county attorney in the matter and the oath of office now having been filed, the said I. C. Sprague is hereby declared to be the legal counsel for the State in this matter."

Following this, Mr. Sprague made his opening statement and Mr. Shipp also made an opening statement, and the trial proceeded.

It is now argued in this court (and so far as the record discloses this is the first place the point has been raised), that Mr. Sprague was not entitled to act as special prosecutor because he had not taken the oath commonly called the "non-Communist oath" 'required by the Act of the Legislature passed in 1951, and appearing at Tit. 51 O.S. 1951 §§ 37.1 to 37.8.

An examination of this act, different from the constitutional provision, supra discloses that it contains no prohibition whatever against public officers qualifying for and entering upon the performance of the duties of such office, or employment, without first having taken such non-Communist oath (though as a practical matter it would seem that it would be preferable that such oath be subscribed at the same time.) It is not required as a condition precedent. The act provides that the office-holder or employee shall take such oath within the first 30 days after taking office, or within 30 days of such employment, and it is forbidden that compensation be paid any such person until such oath shall be taken, etc., but no provision is set out which would invalidate the acts of such officer or employee who might fail to take the oath.

From the very wording of the Act it would seem that the Legislature perhaps overlooked persons required to perform one act that might require, ordinarily, but a few minutes or hours, though by reason of the purpose of the Act, there cannot be much doubt but that everyone, whether employed by the state or municipality,

for any time whatever should sign the oath in that one of the main purposes is. to require loyalty of employees, prevent sabotage or subversive activities, mental or physical. See Board of Regents of Oklahoma Agricultural Colleges v. Updegraff,. 205 Okla. 301, 237 P. 2d 131, for general discussion of the Act. But in this case it is not necessary to go into this feature of the question by reason of the fact that the question was never specifically called to the attention of the court and the court did not have opportunity of considering the same. This principle. was involved in Wingfield v. State, 89 Okla. Cr. 45, 205 P. 2d 320, 331, and there Judge Brett, speaking for this court, in part said:

"The record discloses that counsel for the defendant in presenting the said. protest did not urge the contention they now make as to failure of the special county attorney and prosecutor to take an oath before assuming such duties. On the contrary, it clearly shows, quoting from Judge Summers, the discussion on the protest 'was limited to the fact that there was an assistant county attorney who. was not legally disqualified to try the case and the attention of the court specially directed to that ground of the objection' and 'the suggestion that the special counsel were not legally qualified was not otherwise given any direct considera- tion, either by counsel or by the court,' other than the allegations contained in. the protest, supra. In other words it appears that counsel for the defendant were 'laying behind a log' which practice we do not approve. It takes unfair advantage of the trial court and the State. It is an attempt to create a point by technical silence which if urged would be obviated and the technicality destroyed. Such conduct is similar to complaining about the court's failure to instruct on a certain feature of a case, without at the time of trial suggesting the necessity of such an instruction. This court has often said it will not permit that kind of contention to prevail. Likewise we are of the opinion that since this contention. relative to the failure of the special county attorney and prosecutor to take an oath was never argued to the court, merely filing a protest which did not clearly disclose such grounds but from which such argument might have been made, but was not made, does not amount to a valid presentment and objection. To hold otherwise would compel us to look at form and not at substance. We are there- fore of the opinion that this ground was waived by failure to present the same. to the trial court so that he could intelligently pass upon the objection hidden in the protest, but never disclosed to the trial court until the filing of the motion for new trial. We do not feel constrained to make of criminal procedure a game, where the trial court must match wits with the lawyers in an effort to ascertain. hidden purposes, which they may not choose to disclose, in order to gain future advantage. Under the conditions herein presented we must conclude this propo-. sition is likewise without merit."

The same principle was involved in the recent case of Rutherford v. State,. 95 Okla. Cr. 311, 245 P. 2d 96; Ballew v. State, 55 Okla. Cr. 247, 28 P. 2d 993; White v. State, 81 Okla. Cr. 399, 165 P. 2d 151.

We find that by failure of the counsel, in his objection to the special county attorney acting in this case, to object on the specific ground of his failure to sign the oath set out in Tit. 51 O.S. 1951 §§ 37.1 to 37.8 that he waived such objection.

Considering the second proposition, it is contended that the trial court committed error in admitting in evidence the testimony of witness given at a former trial without a transcript of such testimony having been prepared and filed with the court clerk.

At the former trial witnesses Jesse Moore, Dr. Chas. N. Jones, and Walter. Irons had testified. For the second trial, and here involved, subpoenas were issued; for such witnesses on the 21 day of May, 1951, and were returned on May 26, 1951, showing the witnesses Moore and Irons not found. Prior to the second trial on June 11, 1951, the prosecution, as disclosed by the record, discovering; that the witnesses in question were outside the State of Oklahoma, and would not be back for the trial, had the testimony of such witnesses so given at the.

first trial transcribed, same being completed May 30. A copy was handed Mr. Shipp, one of defendant's attorneys, about 6:00 p.m. the day before the trial. He wanted the case continued "for several days' 'so that he could further study this testimony. The trial court ruled:

"Since the trial was held beginning on November 1, 1950, last year, and this witness was in court and that witness was thoroughly cross-examined, and under the holdings of the court that it need not be filed, I don't feel like giving you that long, Mr. Shipp, you have had access to it."

Counsel admits that there is no statutory provision or decision of this court holding it necessary that a transcript as here involved be prepared and filed in the case in order to make admissible the testimnoy of witnesses at a former trial.

We hold that the court did not err in the admission of such transcript and refusing to continue the case under the facts shown.

By proposition three counsel calls attention to Instruction No. 4, wherein the court defines the offense of manslaughter in the first degree, but omitted the statutory words, *"unless it is committed under such circumstances as constitute excusable or justifiable homicide."* 21 O.S. 1951 § 711. (Emphasis supplied.) This quoted clause should have been included in instruction No. 4. However, it was made a part of instruction No. 15, which reads:

"No. 15. If you do not believe from the evidence in this case, beyond a reasonable doubt, that the defendant Albert Lee, is guilty of murder, as herein defined to you, then you may consider all the facts and circumstances in this case as to whether or not you believe from the evidence in this case, beyond a reasonable doubt, that the defendant is guilty of manslaughter in the first degree, as herein defined to you. [The above paragraph excepted to by defendant.]

"And you are instructed that if you believe and find from the evidence in this case, beyond a reasonable doubt, that the defendant, Albert Lee, did, in McCurtain County, Oklahoma, on or about the 30th day of March, 1950, unlawfully, wilfully, feloniously, *without justifiable or excusable cause,* and without authority of law, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon, or unnecessarily, while resisting an attempt by Lilon Calvin Ray to commit a crime, or after such an attempt had failed, strike and hit the said Lilon Calvin Ray on about his person and head with a certain blunt instrument, the same then and there being a dangerous and deadly weapon then and there held in the hands of the said Albert Lee, and did then and thereby inflict upon the body of the said Lilon Calvin Ray certain mortal wounds from which the said Lilon Calvin Ray died, then it will be your duty to convict the defendant, Albert Lee, of manslaughter in the first degree," (Italics ours.)

Counsel for defendant asserts that by authority of Anderson v. State, 90 Okla. Cr. 1, 209 P. 2d 721, the instructions given were insufficient in respect complained of, and that the case accordingly should be reversed.

In the Anderson case there was a conflict between two instructions given. They were self-contradictory. The last paragraph of No. 15, here, specifically instructs the jury as to what they must find in order to convict the defendant of manslaughter in the first degree and supplies the omission of No. 4. Instructions are to be construed as a whole, and if, when so construed, they clearly and concisely state the law, then the instructions are sufficient. Price v. State, 1 Okla. Cr. 358, 98 P. 447; Burroughs v. State, 80 Okla. Cr. 271, 158 P. 2d 723; Mayberry v. State, 94 Okla. Cr. 301, 238 P. 2d 362.

It is finally contended that the punishment inflicted by the jury is excessive, and should at all events be modified. Counsel argues that if the defendant had reported the killing to the officials and had not disposed of the body, that the

jury undoubtedly would have believed his testimony of self-defense and would have freed him. This may be. On the other hand, the defendant did in the night-time drive to a river near DeQueen, Arkansas, and dump the body in the river, and if the state witness had been fully believed, the jury might have found defendant guilty of murder and fixed a much more severe penalty.

The evidence discloses that the defendant lived a few miles south of Idabel and operated a small store and two small farms. He seems to have been a hard-working and industrious negro citizen. He did have a propensity to shoot dice, if tempted. Apparently, one Willie Jones, and Proctor Young, colored boys of Idabel and Kullituklo, respectively, knew this. They appeared at his store about the 29th of March, 1950, with L. C. Ray, a colored gambler of Horatio, Arkansas, whom Jones appeared to have furnished money for the purpose of getting in a dice game with the defendant, and under some kind of an agreement to split any profits. The local negro boys purchased some crackers and sausages and one began to roll dice on the defendant's counter, and defendant gambled with them a few minutes, but they soon dropped out, but defendant and L. C. Ray kept on gambling, retiring to defendant's home in the rear of the store, where they gambled all night and the deceased won, according to the local negroes, more than $400, but according to the defendant, something over $100. Jones and Young stayed around outside in their car. Young at one time got some whiskey and all of them drank some of it. Jones gave L. C. Ray a pistol at one time. Why, was not shown. But sometime the next day the defendant appears to have commenced winning as Ray borrowed money on the pistol and did not redeem it, but defendant gave it to Jones on demand. Jones and Young seemed to think that Ray might skip out without splitting his winnings, so they watched every move of the defendant and Ray. The defendant, the second day of gambling, had to go to his field to instruct a worker and he drove a big cattle truck, and Ray decided to go with him. They got in the covered back of the truck and gambled some more. The defendant, Lee, claims that he then won back most of his money, and the deceased wanted to borrow some to continue, but that he would not let him have it. Lee testified that he got out of the truck and went to see the hired hand about some harrowing and when he came back to the truck the deceased was sitting in the truck opposite the driver's side, and had a .32 calibre automatic pistol that defendant kept in the glove compartment of the truck. Said defendant:

"A. When I came to the truck and started to get in I put my foot on the running board and started to pull in, he had that gun on me. I asked him what he meant. He said he wanted that money. I asked him what money. He said, 'that money you got.' I got down out of the truck. As I got out, I had slid that wrench under the back part of the seat on the floor board, and I darted around the side of the truck. He was getting out of the front part, I guess, I could hear it, and I went around and got under the truck. I got under the truck and could see his feet and see which way he went, he came around the back of the truck, and when he came around I got out and throwed the wrench at him and hit him."

Defendant testified that he went to Idabel to tell Deputy Sheriff Irons, whom he knew well, but that he was not at the courthouse. He did not tell other officers. It was shown that defendant did go to see Deputy Irons at the time testified to, but the nature of his business was not stated by him to anyone. He did tell Jesse Moore, a colored boy, and Moore assisted defendant in disposing of the body, which was found on April 8, 1950, at a point in Rolling Fork River south of U. S. Highway 70, between DeQueen, Arkansas and Broken Bow, Oklahoma. The body was duly identified. Both the defendant and Jesse Moore admitted dumping the body in the river.

We do not find from the record where any substantial right of the defendant has been violated. There is nothing that would justify this court in modifying

the verdict of the jury and judgment of the court, however much the peculiar facts in this case and knowledge of colored folks might compel the story of defendant to appeal to us. It was within the province of the jury to weigh the evidence, and is not within ours. As this court stated, through Jones, J., in Berkihiser v. State, 92 Okla. Cr. 31, 219 P. 2d 1020.

"The statutory, power granted to Criminal Court of Appeals to modify a sentence of one convicted of crime and who has appealed will not be exercised unless court can conscientiously say from all the facts and circumstances that the sentence is so excessive as to indicate that jury acted from partiality or prejudice."

The judgment is affirmed.

BRETT, P. J., and JONES, J., concur.