John Francis MAMMANO, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12614.

Criminal Court of Appeals of Oklahoma.

Oct. 15, 1958.

Rehearing Denied Dec. 31, 1958.

Thomas Dee Frazier, John L. Ward, Jr., Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

John Francis Mammano, plaintiff in error, defendant below, an eighteen year old airman, was charged by information in the District Court of Washington County, Oklahoma, with the crime of murder. The information alleged that Mammano stabbed Victor Anson Dodge in the chest near the heart with a four inch switch blade knife, from which wound Dodge died. The offense was allegedly committed on or about June 2, 1957, in said county and state. He was tried by a jury, convicted of manslaughter in the first degree, and his punishment fixed at 25 years in the state penitentiary. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

▇▇▇ Briefly, the facts are: On June 2, 1957, together with another airman, the defendant left the air base where he was stationed and went to three different tap rooms successively, drinking beer at each of them. At a fourth tap room, they made the acquaintance of one John Floyd Hall, and with him they went to Russell's Drive In in Bartlesville, Oklahoma. There, they ordered more beer and were refused because of their youthful appearance. The victim, Dodge, interceded in behalf of the defendant and his party, stating to the operator of the drive in that if they were old enough to be in the military service, they were old enough to drink beer. Nevertheless, the bartender refused to serve the beer, whereupon, Dodge offered to take the boys to town in his two-door sedan. Two of the boys sat in the front seat with Dodge and one of them in the back seat. The reason for this arrangement was because of sample cases of pharmaceutical supplies which occupied a portion of the back seat. After stopping and drinking beer at two taverns, the party went to Walker's Drive In. The defendant and Hall got out of the car and went to the rest room. Wainwright, another member of the party, remained in the back seat of the car. When the defendant returned, he got into the front seat of the car with the deceased. Shortly thereafter, another vehicle drove up containing acquaintances of the defendant and Wainwright. Wainwright desired to get out of the car and in order to do so, it was necessary to fold the front seat forward. That left only the defendant and the decedent in the front seat of the car. While the defendant was leaning forward to permit Wainwright to get out, as the defendant testified, the decedent grabbed Mammano's left hand and placed it on the decedent's private parts. The defendant said he jerked his hand free, reached through his rain coat into his hip pocket, pulled out his switch blade knife, and "made a pass" at the decedent with the knife. Immediately, Dodge got out of the automobile and said, "Why did you stab me?" The record shows the defendant got out of the car and in effect stated the decedent's action constituted an immoral invitation to him. The defendant then disposed of the switch blade knife to some one in the automobile or threw it away; in any event, it was never recov-

ered. Thereafter, the defendant took Dodge inside the cafe and put him in a booth. When Mammano brought the decedent into the cafe, he said to the proprietor: "You better get this s— of a b— a towell. He's been stabbed." Mr. Harris, the proprietor, asked the defendant: "Did you stab him?" The defendant replied: "Yes, I stabbed the s— of a b—." The record further discloses that Mammano immediately left the cafe, got in the other automobile with his airmen friends, and exclaimed: "Get me out of here. Get me out of here. I'm in trouble." The proprietor of the cafe rushed outside and told them not to move, that he had their license number. They did not move and Mammano jumped out of the car and ran away. The proprietor of the cafe fired his gun twice in the air, but the defendant kept on going. Later, after the officers arrived, the defendant returned to the scene where he was arrested.

The evidence conclusively points to the guilt of the defendant beyond a reasonable doubt. The only questions raised are in relation to instructions 10, 12, 14, 15, 17, and 19. In considering the defendant's objections to instructions 14, 15, 17, and 19, the record discloses there were no objections made or exceptions taken to the giving of the said instructions. We have examined the foregoing instructions and find them to be not only a substantial statement of the law, but favorable to the defendant. Furthermore, if the defendant was dissatisfied with the said instructions, he should have offered and requested the giving of instructions in lieu thereof which he believed to more correctly state the law of the case. This he did not do. In Storer v. State, 84 Okl.Cr. 176, 180 P.2d 202, 204, in syllabi 9 and 10, we said:

"If counsel for defendant is not satisfied with instruction which is given, and thought that additional instruction on the question should have been given, it was his duty to call the matter to the attention of trial court by requested instruction.

"Alleged error in the giving of an instruction will not be considered on an appeal in the absence of an exception saved to the giving of said instruction, unless it is so basically erroneous as to mislead and confuse the jury as to the issues of the case."

As already indicated, we do not believe these instructions were so basically erroneous as to mislead and confuse the jury.

Instruction 12, which is complained of, reads as follows:

"You are instructed that there is no evidence of excusable homicide in this case, and for that reason a definition thereof will not be given."

The foregoing instruction was not erroneous, but was in keeping with the evidence. The evidence, when viewed from the most favorable standpoint to the defendant, wholly fails to establish either excusable or justifiable homicide. It clearly discloses that this homicide was entirely unnecessary. The record shows that the assault had already been repelled by the defendant jerking his hand away from the decedent's grasp. If the defendant is to be believed, he was technically subjected to a simple assault and battery by the holding of his hand in the manner revealed by the evidence. If Dodge had persisted in his assault, there was nothing to prevent the defendant from leaving the automobile. This he did not do, but instead, reached through the opening in his raincoat into his trousers pocket and brought out the switch blade knife with which he stabbed Dodge. He did not have to kill Dodge in order to protect his person. This Court has repeatedly held that the giving of such an instruction as this under conditions as herewith presented is not reversible error. Burton v. State, 16 Okl.Cr. 602, 185 P. 842; Musgraves v. State, 48 Okl.Cr. 418, 292 P. 376. Anderson v. State, 90 Okl.Cr. 1, 209 P.2d 721, relied on by the defendant, is not in point for therein there was ample evidence to support the theory of excusable homicide. 21 O.S.1951 § 731 defines excusable homicide as follows:

"Homicide is excusable in the following cases:

"1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.

"2. When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner."

Clearly, the facts of this case do not come within the definition of excusable homicide. 21 O.S.1951 § 733 defines justifiable homicide, to-wit:

"Homicide is also justifiable when committed by any person in either of the following cases:

"1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,

"2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and imminent danger of such design being accomplished; * * *".

Certainly there was no reasonable ground in the facts as related by the defendant herein for him to believe that there was imminent danger the felonious assault would be then and there accomplished, which he believed was intended. In Ging v. State, 31 Okl.Cr. 428, 438, 239 P. 685, 689, we said:

"At the point where the apparent danger ceases, the right of self-defense ceases. The right of self-defense must be founded in good faith; there must be a necessity, real or apparent, to jus-

tify one in invoking the right of self-defense. 30 Corpus Juris, 44."

In 40 C.J.S. Homicide § 101, p. 961, in relation to justifiable homicide, it is said:

"The necessity must exist at the time; the mere opinion of the slayer that a crime might be committed at some time in the future is not sufficient as a justification. Killing to prevent a felony is not justifiable if the felony is a secret one, or unaccompanied by force, or if it does not involve the security of the person or home, or where the commission of the felony is problematical or remote."

The defendant's life was not in danger and he was not about to suffer great bodily injury, at least, not under the conditions presented by this record, at the time and place of the alleged assault. The elements of self defense are lacking herein to justify the taking of the decedent's life. In Gransden v. State, 12 Okl.Cr. 417, 158 P. 157, it was said:

"A person assaulted is justified in using so much force as is necessary to his defense; and to repel a simple assault the person assaulted is not authorized to attack his assailant with a deadly weapon, and he is not justified in doing acts calculated to destroy the life of his assailant, unless the assault is of such a character as to excite his fears, as a reasonable man, of danger to life or great bodily harm, and if his assailant retreats in good faith, and he pursues and kills him with a deadly weapon, the killing cannot be justified on the ground of self-defense."

This contention is without merit.

The defendant next complains of instruction 10 which stated in substance that under the statutes of Oklahoma the burden of proving justifiable or excusable homicide devolves on the defendant, to which the defendant did not object, his complaint being specifically directed against the following language further contained in the instruction.

"Thereupon the burden of proof shifts to the defendant; and to discharge it he must produce evidence sufficient in quality and quantity to raise a reasonable doubt, either as to the degree of the homicide, or as to whether he was justifiable or excusable, failing in which a conviction for murder is warranted."

The defendant says that under this instruction the burden was upon him to show his acts were justifiable or excusable. He says that this is not the law for if the evidence of the prosecution shows some evidence that the acts of the defendant were justifiable or excusable, the jury may consider that evidence and acquit the defendant if they do not believe beyond a reasonable doubt that the defendant committed the crime charged. Apparently, the defendant overlooked the line immediately preceding the portion of the instruction found objectionable or he would have not concluded as he did. The preceding line, in substance, states the law as he contends it to be. After stating that certain proof makes a prima facie case of murder, the court said:

"If each of these facts is proved beyond a reasonable doubt, and without disclosing facts sufficient to raise a reasonable doubt as to whether the homicide was only manslaughter or as to whether it was justifiable or excusable, then prima facie the defendant is proved guilty of murder."

There is nothing strange or unusual in the court's instruction. As a matter of fact, it was in keeping with the provisions of 22 O.S.1951 § 745 which reads:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Moreover, this instruction has been approved in other cases. Boswell v. State, 8 Okl.Cr. 152, 126 P. 826; Patton v. State, 55 Okl.Cr. 92, 25 P.2d 74, and cases therein cited too numerous to mention. This contention is likewise without merit.

▮ It has many times been held that the trial court's instructions must be considered as a whole, and, when so considered all together, if they fairly and correctly state the law applicable to the issues of the case, they will be sufficient. Storer v. State, supra; Patton v. State, supra. We are of the opinion the court's instructions are a fair statement of the law as applied to the facts involved in the case at bar. We are also of the opinion the defendant was fortunate in receiving a sentence of no more than 25 years. The judgment and sentence is affirmed.

POWELL and NIX, JJ., concur.