Jimmy Dale COTTRELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14985.

Court of Criminal Appeals of Oklahoma.

June 25, 1969.

Rehearing Denied Sept. 18, 1969.

Frank Grayson, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Grayson P. Van Horn, Asst. Attys. Gen., for defendant in error.

BUSSEY, Judge.

Jimmy Dale Cottrell, hereinafter referred to as defendant, was charged by Information in the District Court of Oklahoma County with the crime of Murder; he was tried by a jury who found him guilty of the included offense of Manslaughter in the First Degree; and his punishment was fixed at twenty years in the State Penitentiary. From the judgment and sentence imposed against him, he appeals.

Briefly stated the facts are that on or about October 29, 1966, the defendant and Olen Eugene Morris, the deceased, were at the Zoo Loo Club where both had been drinking, and the deceased jerked a pool cue out of the defendant's hand. Thereafter, the defendant and others, left the premises and went to the defendant's home where they engaged in a poker game. The deceased came to the defendant's home at the invitation of one of the participants in the card game, where, upon his arrival, the defendant put on his coat. The deceased was intoxicated and interrupted the card game and seized the hands of the players. He was then invited "outside" by the defendant. The pair stepped out-

side and shortly thereafter a shot was heard and the defendant fled the premises and left the State with the weapon used in the homicide, which he disposed of. (He had been seen prior to the date of the homicide in possession of a pistol believed to be a .38 caliber). The deceased, Olen Eugene Morris, died as a result of a gunshot wound inflicted in the throat and emerging from the back of the neck which, from the powder burns and the point of entry, apparently was fired from close range. There were also bruises and abrasions on the face and nose of the deceased. A .38 caliber slug was removed from the garage where it was imbedded, three days after the homicide, by investigating officers, and admitted into evidence.

The defendant testified, in substance, that the deceased was drunk and unruly at his home, that he had interfered with the card game, and that when they went outside the house the deceased pulled the pistol which the defendant wrestled away from him and used to strike him on the face; that the gun accidentally discharged, killing the deceased. He asserted that the homicide was accidentally committed and necessary self-defense and that the weapon used belonged to the deceased; that he had disposed of that weapon after fleeing the premises.

 It is first contended that the trial court erred in admitting the photographs of the deceased, but no authority is cited by the defendant in support of this contention. An examination of the exhibits complained of discloses that they are not gruesome nor were they taken after an extensive autopsy had been performed. They merely show the point of entry of the bullet and its exit point and the bruises and abrasions on the face of the deceased. They accurately depict the powder burns surrounding the wound and were unquestionably of substantial aid to the jury in arriving at their determination. We are of the opinion that the admission of photographs was proper under the rule set forth in Pate v. State, Okl.Cr., 361 P.2d 1086, cited with approval in Buntin v. State,

Okl.Cr., 403 P.2d 237, wherein this Court stated:

"'Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible; when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant.'"

 It is next contended that the trial court erred in admitting the testimony of one of the State's witnesses and refusing to grant a mistrial after having admitted the same when the testimony of said witness disclosed that he had been intimidated by the police to appear and testify against the defendant. We are of the opinion that this assignment of error is likewise without merit, for the testimony of this witness was material and competent to the issues of the case and the determination of the reliability and credibility and weight to be given the testimony of this witness rested in the exclusive province of the jury under the court's instructions.

 In the case of Cawley v. State, 96 Okl.Cr. 53, 248 P.2d 273 (1952), one of the State's witnesses had been jailed prior to defendant's preliminary hearing. He testified against defendant there. This witness was released, but later he was again jailed until the trial where he again testified against defendant. Defendant claimed that this influenced this witness, by psychological pressure, to testify as the State wanted. The Court stated, on page 282:

"The foregoing methods may have prompted the testimony of [the witness], and they may have been the means of obtaining the truth. * * * Furthermore, the facts as hereinbefore related did not go to the *competency* of his evidence, but only as to its credibility. *If duress or coercion was used to obtain the testimony of a witness, this fact goes to the credibility of the witness.* * * *" [Emphasis added].

Coercion of testimony affects credibility and credibility is within the exclusive prov-

ince of the jury to determine. See Keck v. State, Okl.Cr., 376 P.2d 525. We are, therefore, of the opinion that this assignment of error is without merit.

■ Defendant next contends that the prosecutor asked two erroneous and prejudicial questions, and that this requires reversal. The prosecutor first asked a State witness if she was afraid of defendant (CM 94). At that time, defendant objected and urged a mistrial. The objection was sustained and the jury was instructed not to consider the question. No further questions were asked similar to that one. The prosecutor also asked defendant if he returned to Oklahoma after *he fought extradition*. To this, defendant objected and the court sustained the objection and instructed the jury to disregard the question.

■ Assuming that the questions were improper, there was no reversible error committed at the trial. This Court has stated many times that even if there is error during a trial, this alone is not sufficient to require reversal. The error complained of must injure defendant, and the burden is upon him to establish that he was prejudiced in his substantial rights by the error. See Harvell v. State, Okl.Cr., 395 P.2d 331. Oklahoma, in holding that where improper questions are asked, the error must give rise to prejudice before reversal will lie. Harvell, supra, has stated the rule as being that a judgment of conviction must be affirmed in the absence of a reason to believe that an intelligent jury would arrive at any other verdict at a second trial due to the exclusion of the erroneous material. Since the two questions propounded by the prosecutor did not in any way concern the substantive evidence of the crime, it is hard to see how they could have influenced the jury to reach a verdict contrary to what it should have been. There is no reason to believe that the jury would have found any other verdict had these questions not been asked. Since it is incumbent upon defendant to show how the result would have been different if the two questions had not been asked, we are of the opinion that this assignment of error also is without merit.

Defendant next states that it was error to admit any of the testimony of Officer Yandell concerning a bullet which was removed from the garage at the home of defendant during an investigation. To sustain this contention, defendant relies on the rule that to justify conviction on circumstantial evidence, the facts must be consistent with each other and inconsistent with any reasonable hypothesis of innocence. (Citing numerous Oklahoma cases). A reading of the cases which· have set forth this rule show that the court is really trying to exclude the possibility that a man could be convicted when *all* of the circumstantial evidence does no more than present a *suspicion of guilt*. The rule is used as a guide to weigh all of the evidence to see if the jury based its verdict on suspicion or guilt.

The case of Ragland v. State, Okl.Cr., 404 P.2d 84, concerned a prosecution for assault with a deadly weapon. Defendant objected to the admission of the handles of a pistol alleged to have been broken over the head of the prosecuting witness, a pocket knife, and *empty shells and slugs picked up near the scene of the fracas*. This Court, on page 87, stated:

"We hold that the circumstantial evidence as well as the identification of the exhibits questioned was sufficient to connect the defendants with the commission of the crime charged, and to justify the admission of such exhibits into evidence for such weight and credibility as the jury might see fit to give them."

■ The general rule governing admission of physical objects into evidence was set forth in Calhoun v. State, Okl.Cr., 406 P.2d 701, as follows:

" 'Before physical object * *· * is admitted in evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not nec-

essary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, *the lack of positive identification goes to the weight of such evidence rather than its admissibility.'"* [Emphasis added].

We are of the opinion that if the object itself is admissible, certainly testimony concerning it is also admissible.

■ In the instant case the theory of the case offered by the State, other than the fact that defendant had shot deceased, was that after the slight altercation in the night club, defendant made up his mind to get even with deceased, and, therefore, he specifically asked that deceased be invited to his home. When deceased arrived, defendant put on his coat which contained the gun in question. The theory was that this was the same gun that defendant had been seen with some weeks earlier, which was thought to be a .38. The State contended that defendant then went outside with deceased and, by means of that same gun, shot deceased. The gun was never found; therefore, the bullet dug from the garage, which could have been the bullet that killed deceased, was relevant since it was stated by Officer Yandell that it appeared to be a .38 caliber bullet. Defendant's theory of the case was that deceased had the gun on his person, and defendant had taken it from him and used it in self-defense. Therefore, whether it was the same gun defendant had some time earlier is the crux of the case.

There were four important items of circumstantial evidence tending to show that the gun was in defendant's possession and, therefore, he was lying about deceased having the gun. The first was that defendant had been seen with a gun that was believed to be a .38 a few weeks earlier; the second, that defendant put on his coat just as he saw that deceased had arrived at the party; the third, that defendant was the last person seen with the gun in his possession; and the fourth, that defendant admitted taking the gun from the scene and throwing it away. Thus it can be seen that the testimony about the bullet was relevant to both the State's theory of the case and the defendant's theory, and it is the type of evidence that this Court has previously held admissible. We, therefore, hold that this assignment of error is without merit.

■ Defendant next complains that the court's instructions nos. 7, 11, and 14, shifted the presumption of innocence away from the defendant. Instruction No. 7 reads in part:

"* * * But where such burden of proving circumstances that mitigate, justify or excuse the homicide devolves upon the defendant under this instruction, the amount of evidence necessary for that purpose is declared by the law as being such evidence as is sufficient to create in your minds a reasonable doubt upon this issue, and *if the evidence offered by the defendant to* mitigate, excuse or justify the homicide * * * *is strong enough to create* in your minds *a reasonable doubt* as to the guilt of the crime charged in the information, then it will be your duty to acquit him." [Emphasis added].

Instruction No. 11 reads in part:

"Should you find from the evidence in this case that the defendant acted in his own necessary self-defense, or should you entertain a reasonable doubt thereof, you should give the defendant the benefit of such doubt and acquit him."

Instruction No. 14 reads in part:

"As one of his defenses, defendant says that the shooting was accidental and without any intent on his part, and should you so find or should you entertain a reasonable doubt thereof, then in either of said latter events you should find the defendant not guilty."

These instructions place upon defendant *the burden of going forward* with evi-

dence *to create a reasonable doubt* in the minds of the jury on defendant's issues of self-defense and accident. This is defendant's burden and he cannot be heard to complain of it on appeal. 22 O.S.1961, § 745.

Defendant complains that this burden was placed upon him because the prosecutor did not attempt to raise a reasonable doubt of murder in the minds of the jury on his own accord. The duty of the prosecutor is not to judge the facts; that is the job of the jury. The prosecutor is under a duty to present all the evidence available to him and then to let the jury determine the facts. This the prosecutor did. He should not be criticized for carrying out his duty of prosecuting to the fullest extent of the law.

The burden to create a reasonable doubt in the minds of the jury has traditionally been the burden of defendant. There is no requirement in these instructions that defendant *prove* anything. All of the cases cited by defendant state that it is error to require defendant to prove to the jury's satisfaction any issue of the case. This is true; however, that is not equivalent to placing the burden of creating a reasonable doubt in the minds of the jury on defendant. The burden of proof of most issues in a criminal prosecution may not be placed upon defendant because that would deny him his presumption of innocence. However, *the burden of coming forward* with evidence to create a reasonable doubt as to affirmative defenses is properly placed upon defendant.

Title 22 O.S.1961, § 745, states:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter or that the defendant was justifiable or excusable."

This Court held in Dorris v. State, 27 Okl.Cr. 208, 226 P. 590 (1924) that this section does not mean that the defendant must prove such circumstances by a preponderance of the evidence. Defendant is only bound to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt. The court held that even if an instruction was stated in the exact terms of the statute, which seems to place the burden of proof on defendant by a preponderance of the evidence, the instructions are correct when the court further instructs on the presumption of innocence and the State's duty to prove its case beyond a reasonable doubt, which was done in Instruction No. 3. Instruction No. 7 is less stringent than the instruction given in the Dorris case since it, in and of itself without help from other instructions, states that the only evidence that defendant must offer is enough to create a reasonable doubt of his guilt. See also Patton v. State, 55 Okl.Cr. 92, 25 P.2d 74 (1933).

In the case of Saulsbury v. State, 83 Okl.Cr. 7, 172 P.2d 440 (1946), this Court approved an instruction almost identical to Instruction No. 7. It might also be noted that the other two instructions complained of do not in any way shift the burden of proof to defendant. They are supplemental to Instruction No. 7, and they tell the jury to acquit defendant if they have a reasonable doubt as to defendant's affirmative defenses.

Assuming that defendant properly objected and excepted to the giving of these instructions, which fact is *not apparent* from the record, defendant still may not predicate error upon these instructions. In Mammano v. State, Okl.Cr., 333 P.2d 602 (1958), this Court approved an instruction which set forth in substance Section 745, supra, and then added:

"Thereupon the burden of proof shifts to the defendant; and to discharge it he must produce evidence sufficient in quality and quantity to raise a reason-

able doubt, either as to the degree of the homicide, or as to whether he was justifiable or excusable, failing in which a conviction for murder is warranted."

■ In Musgraves v. State, 48 Okl. Cr. 418, 292 P. 376, this Court stated:

"In Duncan v. State, 11 Okl.Cr. 217, 144 P. 629, 630, this court, in the fifth paragraph of the syllabus, said: 'An assignment of error, based upon an instruction of the court bearing upon the question of the guilt or innocence of the person on trial of murder is of no avail when the jury returned a verdict finding such person guilty of manslaughter and not of murder.' Tinney v. State, 19 Okl.Cr. 127, 201 P. 819."

For all of the reasons above set forth, we are of the opinion that this assignment of error is without merit.

Defendant next contends that the court's instruction No. 18 was not a full and correct statement of the law. Instruction No. 18 states in full:

"In that event, if you believe from the evidence, beyond a reasonable doubt, under the instructions, that on or about the date alleged, at the time and place alleged, in Oklahoma County, Oklahoma, the defendant did wilfully, wrongfully, and without authority of law shoot the said deceased OLEN EUGENE MORRIS as alleged in the information, inflicting certain mortal wounds from which decedent died, but that said killing was one without design to effect death, and in a heat of passion, and by means of a pistol, then you shall find the defendant guilty of manslaughter in the first degree, but if you do not so find, or should you entertain a reasonable doubt thereof, or *should you find that the defenses of accident or self-defense, or either* of them, as defined in these instructions, *has been sustained, or should you entertain a reasonable doubt thereof,* then in either of said latter

events *you should return a verdict of not guilty."* [Emphasis added].

Title 21 O.S.1961, § 711 defines manslaughter in the first degree, in pertinent part, as follows:

"1. * * *

2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide."

The elements of said statute appropriate to this case are that the death must have been perpetrated without a design to effect the same, in a heat of passion, by means of a dangerous weapon, while not · being either justifiable or excusable homicide.

The above instruction sufficiently sets forth all of the elements of law applicable to this case. It is evident from the brief of defendant that he did not read Instruction No. 18 in its entirety since he assumed that the portion italicized above was not contained therein. Instructions are to be read as a whole to see if they sufficiently set forth the law. Lee v. State, 96 Okl.Cr. 170, 250 P.2d 883 (1952).

Instruction No. 8 sets forth the statutory language of the entire manslaughter in the first degree statute. Excusable homicide is defined fully in Instruction No. 9, and justifiable homicide is defined fully in Instruction No. 10. Instructions Nos. 11, 12, 13, and 14 further define the defenses of excusable and justifiable homicide. Again, it may be stated that nowhere in the record does it appear that defendant objected and saved an exception to the giving of the instructions of the court. In cases such as that, this Court will examine instructions only for fundamental error. Mammano, supra.

In the Lee case, supra, an instruction on Manslaughter in the First Degree omitted the words "unless it is committed under such circumstances as constitute excusable or justifiable homicide." How-

ever, the Court held that this was sufficiently covered by subsequent instructions and that instructions are to be considered as a whole. See also Collier v. State, 96 Okl.Cr. 32, 253 P.2d 568 (1952). In the instant case, the portion concerning excusable and justifiable homicide was contained in the instruction complained of, as well as elsewhere in the instructions.

Therefore, it may be seen that the instructions, taken as a whole, contained all of the law applicable to the offense in question and were imminently fair to defendant. Accordingly, we find this assignment of error to be without merit.

Defendant's last contention of error, although couched in terms of the justification of defendant's actions, is really an argument against the sufficiency of the evidence to sustain a conviction.

Some of the evidence of guilt was disputed, but it is within the exclusive province of the jury to determine the facts and to choose which witnesses to believe even if the evidence is overwhelmingly against said testimony. Davidson v. State, Okl.Cr., 429 P.2d 1017 (1967).

In the instant case, the defense was self-defense, the jury determined the issue against defendant, and, as stated in the summary of evidence, there was competent evidence to sustain the verdict. We, therefore, follow the rule set forth in the third paragraph of the Syllabus of Beavers v. State, Okl.Cr., 282 P.2d 783, that:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, this court will not interfere with verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

For all of the reasons above set forth, the judgment and sentence appealed from is Affirmed.

BRETT, P. J., and NIX, J., concur.